George P. **SHULTZ**, Secretary of Labor, United States Department of Labor, Appellant,

v.

**WHEATON GLASS COMPANY**, a Corporation.

No. 17517.

United States Court of Appeals Third Circuit.

Argued May 20, 1969.

Reargued Dec. 5, 1969.

Decided Jan. 13, 1970.

As Amended and Rehearing Denied Feb. 13, 1970.

Certiorari Denied May 18, 1970. See 90 S.Ct. 1696.

Bessie Margolin, U. S. Department of Labor, Washington, D. C. (Laurence H. Silberman, Solicitor of Labor, Harold C. Nystrom, Acting Solicitor of Labor, Carin Ann Clauss, Anastasia T. Dunau, Robert E. Nagle, Attys., Dept. of Labor,

Washington, D. C., Francis V. La Ruffa, Regional Solicitor, John A. Hughes, Regional Atty., on the brief), for appellant.

Albert K. Plone, Plone, Tomar, Parks & Seliger, Camden, N. J. (Robert F. O'Brien, Camden, N. J., on the brief), for amicus curiae, Glass Bottle Blowers Assn. of the U. S. and Canada.

Bruce W. Kauffman, Dilworth, Paxson, Kalish, Kohn & Levy, Philadelphia, Pa. (Harold E. Kohn, David Pittinsky, Marcus Manoff, Philadelphia, Pa., Joseph B. Kauffman, Atlantic City, N. J., on the brief), for appellee.

Before FREEDMAN, SEITZ and ALDISERT, Circuit Judges.

## OPINION OF THE COURT

FREEDMAN, Circuit Judge.

This appeal presents important problems in the construction of the Equal Pay Act of 1963 (29 U.S.C. § 206(d)), which was added as an amendment to the Fair Labor Standards Act of 1938 (29 U.S.C. §§ 201 et seq.).

The Equal Pay Act prohibits an employer from discriminating "between employees on the basis of sex by paying wages to employees * * * at a rate less than the rate at which he pays wages to employees of the opposite sex * * * for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to * * * (IV) a

differential based on any other factor other than sex * * *."[1]

Invoking the enforcement provisions of the Fair Labor Standards Act[2] the Secretary of Labor brought this action against Wheaton Glass Co., claiming that it discriminated against its "female selector-packers" on the basis of sex by paying them at an hourly rate of $2.14, which is 10% less than the $2.355 rate it pays to its "male selector-packers." The Secretary sought an injunction against future violations and the recovery of back pay for past violations.[3] The company denied that the female selector-packers perform equal work within the terms of the Act and claimed that in any event the 10% pay differential is within exception (IV) of the Act because it is based on a "factor other than sex."

After an extensive trial the district court entered judgment for the defendant, holding that the Secretary had failed to carry his burden of proving that the wage differential was based upon sex discrimination and that the company had discharged the burden of establishing the exception that the wage differential was based on a factor other than sex. Wirtz v. Wheaton Glass Co., 284 F.Supp. 23 (D.N.J.1968). The Secretary has appealed.

The company is one of the largest manufacturers of glass containers in the United States. Its plant at Millville, New Jersey, which is here involved, is called a "job shop" plant and manufactures glass containers to special order. Unlike the usual modern plants in the

---

1. 29 U.S.C. § 206(d) (1). The full provision reads:

"No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except

where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex: *Provided*, That an employer who is paying a wage rate differential in violation of this subsection shall not, in order to comply with the provisions of this subsection, reduce the wage rate of any employee."

2. 29 U.S.C. § 217.

3. See 29 U.S.C. § 206(d) (3).

glass industry which make standard items in large quantities and employ automatic machinery, the company's job shop operation requires manual handling and visual inspection of the product.

Selector-packers are employed in the Bottle Inspection Department. They work at long tables and visually inspect the bottles for defects as they emerge on a conveyor from the oven, or "lehr." The defective products are discarded into waste containers. Those which meet the specifications are packed in cardboard cartons on a stand within arm's reach of the selector-packers and then lifted onto an adjacent conveyor or rollers and sent off to the Quality Control Department for further examination and processing. In the Bottle Inspection Department is another category of employees known as "snap-up boys," who crate and move bottles and generally function as handymen, sweeping and cleaning and performing other unskilled miscellaneous tasks. They are paid at the hourly rate of $2.16.

Prior to 1956, the company employed only male selector-packers. In that year, however, the shortage of available men in the Millville area forced the company to employ for the first time female selector-packers. On the insistence of the Glass Bottle Blowers Association of the United States and Canada, AFL-CIO, Local 219, with which the company had a collective bargaining agreement, there was, in the language of the district court, "carved out of the total job of selector-packer * * * a new role of female selector-packer." This new classification was written into the collective bargaining agreement, and pursuant to it female selector-packers were not to lift bulky cartons or cartons weighing more than 35 pounds. At the union's insistence a provision was added to the collective bargaining agreement that no male selector-packer was to be replaced by a female selector-packer except to fill a vacancy resulting from retirement, resignation, or dismissal for just cause.

On its face the record presents the incongruity that because male selector-packers spend a relatively small portion of their time doing the work of snap-up boys whose hourly rate of pay is $2.16, they are paid $2.355 per hour for their own work, while female selector-packers receive only $2.14. This immediately casts doubt on any contention that the difference in the work done by male and female selector-packers, which amounts substantially to what the snap-up boys do, is of itself enough to explain the difference in the rate of pay for male and female selector-packers on grounds other than sex.

The district court explored this difference in some detail. The court found that while male and female selector-packers perform substantially identical work at the ovens, the work of the male selector-packers is substantially different because they perform sixteen additional tasks. These consist of lifting packages weighing more than 35 pounds;[4] lifting cartons which, regardless of weight, are bulky or difficult to handle; stacking full cartons; tying stacks of cartons; moving wooden pallets fully loaded with stacks of cartons; moving and placing empty pallets for later use; operating hand trucks near the ovens; positioning and adjusting portable roller conveyors and packing stands holding empty cartons for filling; collecting dump trays and tubs of rejected glassware; sweeping and cleaning work areas near the ovens; fitting and attaching metal clips to glass containers at the ovens; unjamming over-

---

4. For a discussion of the effect of weight-lifting restrictions under the Equal Pay Act, see H.R.Rep. No. 309, to accompany H.R. 6060, at p. 3, 88th Cong. 1st Sess. 1963, p. 687. See also comments of Rep. Thompson of New Jersey, 109 Cong.Rec. 9198 (1963). Weight-lifting restrictions on females similar to those imposed by Wheaton Glass have been held illegal under the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. Bowe v. Colgate-Palmolive Co., 416 F.2d 711 (7 Cir. 1969); Weeks v. Southern Bell Tel. & Tel Co., 408 F.2d 228 (5 Cir. 1969).

head carton conveyors and automatic belts; occasionally reinspecting, repacking and restacking glassware already delivered to the premises of customers; locating glassware in the warehouse, at times involving climbing over palletized cartons; and voluntarily working, when necessary, in excess of ten hours per day or of 54 hours per week.[5] The district court also found that the training period for men was six months, whereas the training period for women was three months.[6]

The district court pointed to evidence submitted by the company that the male selector-packers spent an average of approximately 18 percent of their total time on this work, which was forbidden to women. It made no finding, however, that this was a fact, nor did it make any finding as to what percentage of time was spent by male selector-packers either on the average or individually in performing this different work. Indeed, it made no finding that all male selector-packers performed this extra work, but only that the extra work when not performed by snap-up boys was done by male selector-packers. There is, therefore, no basis for an assumption that all male selector-packers performed any or all of these 16 additional tasks.

Even if there had been a finding that all the male selector-packers performed all of the 16 additional tasks and that these consumed a substantial amount of their time, there would still be lacking an adequate basis for the differential in wages paid to male and female selector-packers. For there would be no rational explanation why men who at times perform work paying two cents per hour more than their female counterparts should for that reason receive 21½ cents

per hour more than females for the work they do in common.

The district court, therefore, placed its conclusion on a factor of "flexibility." The company's job shop requires frequent shutdowns of the ovens when a customer's order is completed and before the run of a new order is begun. During such shutdowns the idled female selector-packers are assigned to what is known as the "Resort" area, where they inspect and pack glassware rejected by the Quality Control Inspection Department. Idled male selector-packers are similarly reassigned to the Resort area, but some of them are assigned to do work which otherwise would be done by snap-up boys.

The district court found that this availability of male selector-packers to perform the work of snap-up boys during shutdowns was an element of flexibility and deemed it to be of economic value to the company in the operation of its unique, customized plant. It is on this element of flexibility that the judgment of the district court ultimately rests.

Under the collective bargaining agreement the company could at any time assign selector-packers to perform the work of snap-up boys, although they would continue to receive their regular rate of pay. While this explains why male selector-packers would not have their pay reduced in performing work of snap-up boys, it does not run the other way and explain why their performance of the work of snap-up boys who receive only two cents per hour more than female selector-packers justifies their being paid 21½ cents per hour more than female selector-packers for performing selector-packer work.

Whatever difference may exist in the total work of male and female selector-

5. It is argued that under New Jersey law, women are barred from working double shifts. But see Wirtz v. Rainbo Baking Co. of Lexington, 303 F.Supp. 1049 (E.D.Ky.1967), holding that such a statutory restriction on the number of hours a female employee can work will not justify payment of lower wages. To the same effect as *Rainbo*, see the applicable regulation, 29 C.F.R. § 800.163.

6. A similar difference in training was recently held not to constitute a defense to a claim of discrimination under the Equal Pay Act. Shultz v. First Victoria National Bank, 420 F.2d 648 (5 Cir. 1969).

packers because men also perform work of snap-up boys does not justify a class wage differential in the absence of any finding regarding the number of male selector-packers who perform or are available for the work of snap-up boys. While all male selector-packers receive the higher rate of pay, there is no finding that all of them are either available for or actually perform snap-up boys' work.

An even more serious imperfection in the claim of flexibility is the absence, as we have already indicated, of any finding or explanation why availability of men to perform work which pays two cents per hour more than women receive should result in overall payment to men of 21½ cents more than women for their common work. A 10% wage differential is not automatically justified by showing that some advantage exists to the employer because of a flexibility whose extent and economic value is neither measured nor determined and which is attained by the performance of work carrying a much lower rate of pay. In short, there is no finding of the economic value of the element of flexibility on which the district court justified the 10% discrimination in pay rate between male and female selector-packers.

There is, moreover, an additional element of significance with which the district court did not deal. Just as it has not been made clear by any finding that all male selector-packers perform or are available for the work of snap-up boys, so there is an absence of any finding on the ability of any female selector-packers to perform the work of snap-up boys. The fact that some female selector-packers, unlike some male selector-packers, may have been unwilling or unable to do the work of snap-up boys might justify a wage differential between them. But it would still leave open the question why the company did not include under its flexibility requirement the female selector-packers who are both able and willing to do the work of snap-up boys. There may have been some male selector-

packers who were unwilling or even incompetent to do the work of snap-up boys. Yet because some of the class was willing and available to do the work of snap-up boys, all of the class received 21½ cents per hour more than all females, including those who might have been willing and able to do the work of snap-up boys when it was required.

These disparities in rates of pay under which snap-up boys performing physical labor receive a higher rate than female selector-packers while male selector-packers receive a much higher rate because they are available also to do some of the work of snap-up boys, take on an even more discriminatory aspect when viewed in the light of their history. For as the district court indicated, the classification of female selector-packers at the lowest rate of pay of these three categories was made at a time of labor shortage when the company was forced to hire women and the union insisted on conditions which would minimize their future competition against the men with whom they would now be working. The motive, therefore, clearly appears to have been to keep women in a subordinate role rather than to confer flexibility on the company and to emphasize this subordination by both the 10% differential betwen male and female selector-packers and the two cents difference between snap-up boys and female selector-packers.

The effect of such a motive and the evaluation of the distinction in the work done by male and female selector-packers requires us to turn to the construction of the Equal Pay Act of 1963. The Act was the culmination of many years of striving to eliminate discrimination in pay because of sex. Similar bills were before Congress for many years before the Act ultimately was adopted, and in its final form it bears evidence of the competing tendencies which surrounded its birth. There are problems of construction which leap up from the reading of its language. It has not been authoritatively construed by the Supreme Court and a study of its legislative his-

tory and the bills which preceded it [7] yields little guidance in the construction of its provisions in concrete circumstances.

In adopting the Act, Congress chose to specify equal pay for "equal" work. In doing so, Congress was well aware of the experience of the National War Labor Board [8] during World War II and its regulations requiring equal pay for "comparable" work. Under these regulations the National War Labor Board made job evaluations to determine whether inequities existed within a plant even between dissimilar occupations. Since Congress was aware of the Board's policy and chose to require equal pay for "equal" rather than "comparable" work, it is clear that the references in the legislative history to the Board's regulations were only to show the feasibility of administering a federal equal pay policy [9] and do not warrant use of the Board's decisions as guiding principles for the construction of the Equal Pay Act.

■ On the other hand, Congress in prescribing "equal" work did not require that the jobs be identical, but only that they must be substantially equal.[10] Any other interpretation would destroy the remedial purposes of the Act.

■ The Act was intended as a broad charter of women's rights in the economic field. It sought to overcome the age-old belief in women's inferiority and to eliminate the depressing effects on living standards of reduced wages for female workers and the economic and social consequences which flow from it.[11]

■ Differences in job classifications were in general expected to be beyond the coverage of the Equal Pay Act. This was because in the case of genuine job classifications the differences in work necessarily would be substantial and the differences in compensation therefore would be based on the differences in work which justified them. Congress never intended, however, that an artificially created job classification which did not substantially differ from the genuine one could provide an escape for an employer from the operation of the Equal Pay Act.[12] This would be too

---

7. See, e. g., Sen.Rep. No. 176, to accompany S. 1409, 88th Cong. 1st Sess. (1963); H.R.Rep.No. 309, to accompany H.R. 6060, 88th Cong. 1st Sess. (1963); 109 Cong.Rec. 2886–90, 8914–16, 9195–9213, 9761–62 (1963); 108 Cong.Rec. 14767–69 (1962); Hearings Before the Senate Subcomm. on Labor of the Comm. on Labor & Public Welfare on S. 2494 and H.R. 11677, 87th Cong. 2d Sess. (1962); Hearings Before the House Special Subcomm. on Labor of the Comm. on Educ. & Labor on H.R. 3861 and related bills, 88th Cong., 1st Sess. (1963); Hearings Before the House Select Subcomm. on Labor of the Comm. on Educ. & Labor on H.R. 8898 and H.R. 10226, 87th Cong.2d Sess. (1962).

8. The National War Labor Board was created by Executive Order No. 9017, 3 C.F.R. § 1075 (1942).

9. See, e. g., Sen.Rep. No. 176, to accompany S. 1409, 88th Cong. 1st Sess. 3 (1963).

10. See Wirtz v. Rainbo Baking Co., supra, n. 5, in which the court stated that equal work does not mean identical work and

that different tasks which are only incidental and occasional would not justify a wage differential. Accord: Shultz v. Brookhaven General Hospital, 305 F. Supp. 424 (N.D.Tex.1969); Wirtz v. Basic, Inc., 256 F.Supp. 786 (D.Nev. 1966); 29 C.F.R. § 800.100, et seq.

11. The broader anti-discriminatory purposes of the Act, as expressed in the Senate and House subcommittee hearings, the floor debates in Congress, and the message of President Kennedy on signing the Act, are set out in extensive quotation in Shultz v. First Victoria National Bank, 420 F.2d 656–658 nn. 17–21 (5 Cir. 1969). With respect to the depressing effects of sex discrimination on the economy, see also § 2 of the Act, Public Law 88–38 (1963).

12. The committee report accompanying the final version of the Act stated the effect of its language as it bore on job classification as follows: "This language recognizes that there are many factors which may be used to measure the relationships between jobs and which establish a valid basis for a difference in pay.

wide a door through which the content of the Act would disappear.

■ This view is strengthened by the subsequent adoption of Title VII of the Civil Rights Act of 1964 [13] which prohibits discrimination because of sex in the classification of employees as well as in their employment and compensation.[14] Although the Civil Rights Act is much broader than the Equal Pay Act, its provisions regarding discrimination based on sex are in pari materia with the Equal Pay Act. This is recognized in the provision of § 703(h) of the Civil Rights Act (42 U.S.C. § 2000e–2(h)) that an employer's differentiation upon the basis of sex in determining wages or compensation shall not be an unlawful employment practice under the Civil Rights Act if the differentiation is authorized by the Equal Pay Act. Since both statutes serve the same fundamental purpose against discrimination based on sex, the Equal Pay Act may not be construed in a manner which by virtue of § 703(h) would undermine the Civil Rights Act.[15]

It is not necessary here, however, to delineate the precise manner in which these two statutes must be harmonized to work together in service of the underlying Congressional objective. For even if the Civil Rights Act is put aside, the Equal Pay Act alone does not permit artificial classification to prevent inquiry whether there exists a difference in pay for substantially equal work.

■ The district court held that the Secretary failed to carry his burden of proof that the company's wage differential is based on sex discrimination. In view of the facts which the district court found, we hold this conclusion to be erroneous. The Secretary met his burden of proof when he showed that male selector-packers received a pay rate 10% higher than female selector-packers although both performed identical work and that the additional work of snap-up boys which male selector-packers also performed was work which carried virtually the same rate of pay as that done by women. When to these circumstances are added the origin of the classification of female selector-packers and their reduced pay even below that paid to snap-up boys, the Secretary clearly established his prima facie case that the wage differential was based on sex and therefore discriminated against women.

■ Under the statute, the burden of proof thereupon fell on the company to prove its claim that it came within exception (IV).[16] This burden the district court held the company had successfully met.

There is no finding, nor indeed evidence in the record on which a finding could be based, of the economic value of the labor of snap-up boys performed by male selector-packers. Nor is there any finding or evidence from which adequate findings could be made to support the claim that flexibility justifies the 10%

---

These factors will be found in a majority of the job classification systems. Thus, it is anticipated that a *bona fide* job classification program *that does not discriminate on the basis of sex* will serve as a valid defense to a charge of discrimination." [Emphasis supplied.] H.R. Rep. No. 309, May 20, 1963.

13. 42 U.S.C. § 2000e.

14. Section 703 of that Act (42 U.S.C. § 2000e–2) makes it an unlawful employment practice for an employer to fail or refuse to hire or to discharge anyone and also "otherwise to discriminate against any individual with respect to his *compensation,* terms, conditions, or priv-

ileges of employment, because of such individual's race, color, religion, *sex,* or national origin"; or to classify employees in any manner which would deprive or tend to deprive any individual of "employment opportunities or otherwise adversely affect his status as an employee" for any of the above causes, including sex. [Emphasis supplied.]

15. See Kanowitz, "Title VII of the 1964 Civil Rights Act and the Equal Pay Act of 1963," 20 Hastings L.J. 305 (1968).

16. Shultz v. First Victoria National Bank, 420 F.2d 648, n. 6 (5 Cir. 1969); Wirtz v. Basic, Inc., 256 F.Supp. 786, 790 (D. Nev.1966).

wage differential. More significantly, there is nothing in the record to show the amount of any savings which the company effected by being able to use male selector-packers to help out in the work of snap-up boys or that the element of flexibility bore any relation to the 10% wage differential between male and female selector-packers. Nor are there any findings that all members of the class of male selector-packers were able and available to do the work of snap-up boys whereas no members of the class of female selector-packers were so available.

The burden of showing this properly rested on the company, for it invoked the defense that the differential was based on a factor other than sex. In cases such as this, where the justification for the differential rests on economic benefit, the company has peculiarly within its knowledge the means of proof, and the burden therefore is one which cannot be satisfied by general or conclusory assertions.

The district court held that the company met its burden of proving that it came within the exception because "the acceptable proof convincingly demonstrates that the defendant's disparity in wages is based upon factors other than sex * * *." It also stated that "substantial differences exist, in fact, in the full job cycles between the sexes, thereby justifying the disparity in their wages." These, however, are statements of ultimate conclusions for which there is no adequate support either in findings of fact or in the record.

We are, of course, bound by findings of fact unless they are clearly erroneous. Federal Rule of Civil Procedure 52(a). See Speyer, Inc. v. Humble Oil and Refining Co., 403 F.2d 766, 770 (3 Cir. 1968). We are not, however, bound by evidence which has not reached the status of a finding of fact, nor by

conclusions which are but legal inferences from facts. Baumgartner v. United States, 322 U.S. 665, 670–671, 64 S.Ct. 1240, 88 L.Ed. 1525 (1944); Lehmann v. Acheson, 206 F.2d 592, 594 (3 Cir. 1953); and cases cited 2B Barron & Holtzoff, Federal Practice and Procedure § 1137, n. 12 (Wright ed. 1961).[17]

Since the Secretary established his prima facie case and the company failed to prove that the discrimination in wages paid to female selector-packers was based on any factor other than sex, the claim of the Secretary was established and an appropriate judgment should have been entered in his favor.

The judgment of the district court, therefore, will be reversed with direction to enter an appropriate judgment in favor of plaintiff.

---

17. See also United States v. Singer Mfg. Co., 374 U.S. 174, 194, n. 9, 83 S.Ct. 1773, 10 L.Ed.2d 823 (1963), conclusions of fact induced by erroneous legal stand-

ards are not within coverage of Rule 52(a). And see Note, "Social and Economic Facts," 61 Harv.L.Rev. 692, 699–700 (1948).