James D. HODGSON, Secretary of Labor, United States Department of Labor

v.

GEORGE W. HUBBARD HOSPITAL OF MEHARRY MEDICAL COLLEGE, INC., a corporation.

Civ. A. No. 5334.

United States District Court, M. D. Tennessee, Nashville Division.

Oct. 12, 1971.

Edward D. Friedman, Acting Sol., Marvin M. Tincher, Regional Atty., Marne S. Matherne, Atty., U. S. Dept. of Labor, Nashville, Tenn., for plaintiff.

Joseph Martin, Jr., Nashville, Tenn., for defendant.

MEMORANDUM

MORTON, District Judge.

The complaint was filed by the Secretary of Labor against the defendant, George W. Hubbard Hospital of Meharry Medical College, Inc., seeking to enjoin said defendant from alleged violations of § 6(d) and § 15(a)(2) of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 et seq., and such other and further relief as may be necessary and appropriate, including the restraint of any withholding of wages found to be due to employees under the Act.

Jurisdiction is conferred in this Court by § 17 of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 217.

The averred violations deal with the allegedly discriminatory payment of salaries to nurse aides (females) and nurse attendants (males) which is prohibited by the equal pay provisions of the Equal

Pay Amendment to the Fair Labor Standards Act. The defense as proffered by the defendant is that the nurse attendants (male) perform additional tasks which (1) require extra effort, (2) consume a significant amount of time, and (3) are of an economic value commensurate with the pay differential.

## FINDING OF FACTS

The stipulated facts are as follows:

(1) George W. Hubbard Hospital (hereinafter called Hubbard Hospital or Hospital) is owned and operated by, and as a division of, Meharry Medical College. Hubbard Hospital has an annual gross volume of sales or business done of approximately $3,000,000. The hospital is located at 1005 18th Avenue, North, in Nashville, and has been in operation at this location since 1931. It is a full service hospital, open to the general public, and normally has approximately 200 patients. The hospital generally employs some 450 employees, and operates on three shifts: 7 a. m. until 3 p. m., 3 p. m. until 11 p. m., and 11 p. m. until 7 a. m.

Hubbard Hospital generally employs some 50 to 60 female "nurse aides" and some 20 to 25 male "nurse attendants." Prior training or experience is not a prerequisite to employment and the starting pay within each classification is the same regardless of prior training or experience. At the beginning of employment both nurse aides and nurse attendants are given three to six weeks of on-the-job training and orientation. The training for the aides and attendants is essentially the same.

(2) Nurse aides and nurse attendants work on all three shifts. The routine patient care is essentially the same on all three shifts. The normal workweek for these employees consists of five 8-hour shifts or a total of 40 hours a week. With the exception of Obstetrics-Gynecology, the various nursing service areas throughout the hospital contain both male and female patients. There are no male attendants assigned to pediatrics, cardiology, female surgery, or obstetrics; both male and female aides are assigned to male surgery, private surgery, recovery room, emergency room, and internal medicine; and they are indiscriminately assigned to care for patients of the opposite sex. The pay of the employees within each classification, basically, does not vary because of the shift or nursing service departments to which they are assigned.

(3) The female nurse aides and male nurse attendants are assigned to and do perform essentially the same routine patient care, examples of which are as follows: give bed baths, back care, and change linen and make beds; give and assist with personal hygiene; feed patients and provide ice and drinking water; provide care for incontinent patients; take and record vital signs (temperature, pulse, respiration, weight and blood pressure); provide and remove bedpans and urinals; answer patients' signal lights; assist patients in and out of bed; perform simple treatments; collect specimens; measure intake and output; report on and off duty to nurse in charge and hear patient reports; participate in in-service educational programs; give enemas and perform urine-sugar tests; shave patients; wheel and walk patients; and dress or help dress patients.

(4) The work of the employees within the classifications in question has been substantially the same throughout the period since February 1, 1967.

(5) The work of the female nurse aides and male nurse attendants is substantially equal in terms of skill and responsibility. The jobs are performed within the same establishment and under similar working conditions. The performance evaluation records maintained by defendant with respect to the female nurse aides and the male nurse attendants show that overall the performance rating of the employees is substantially equal.

(6) During the period pertinent to this case the weekly starting rates for

40-hour workweeks for the men and women in question have been as follows:

| Period Covered | Female Nurse Aides | Male Nurse Attendants |
|---|---|---|
| 2–1–67 to 2–1–68 | $ 40 | $ 46 |
| 2–1–68 to 6–30–68 | 46 | 51 |
| 7–1–68 to 2–1–69 | 49 | 54 |
| 2–1–69 to 6–30–69 | 52 | 58 |
| 7–1–69 to 2–1–70 | 58 | 80 |
| 2–1–70 to 6–30–70 | 58 | 80 |
| 7–1–70 to Present | 64 | 80 |

During the period since 1968, the wage rate differential between the male and female employees in question has averaged 30 cents an hour.

(7) The defendant does not contend that the wage rate differentials are based on a merit system, a seniority system or on a system which measures earnings on the basis of quality or quanity of production.

(8) If the Court finds that the work of all the nurse aides and nurse attendants is substantially equal within the meaning of the Act, then $68,949 is owed to 115 female nurse aides for the period January 1, 1968, to January 1, 1971.

(9) Hubbard Hospital was first investigated by the Department of Labor in April, 1967, again in August, 1968, and finally in February, 1971. The Department in its first, and in subsequent investigations, has advised the defendant that it considers the jobs of the female nurse aides and male nurse attendants to be substantially equal and that the current wage rate differential is in violation of the Act. The defendant's basic position, as set forth in the letter from the Hospital Administrator to Mr. C. W. Carden of the Department of Labor (Exhibit 3 to the Vanstone Deposition), in the first and all subsequent investigations, is that the aforesaid jobs are not equal in terms of effort and that a wage rate differential is not in violation of the Act.

This Court is required to determine whether the male attendants performed additional duties which consume a significant amount of their time and require extra effort, with an economic value commensurate with the pay differential.

The determination of these facts requires the evaluation of the testimony given by the respective witnesses, said witnesses consisting of two classes in general, i. e., nurse aides and attendants, and the hospital's supervisory staff. It is of interest that the persons who were more closely associated with the activities of the nurse aides and nurse attendants, the "charge nurses," who have direct supervision of the nurse aides and nurse attendants, were not called to testify. Although one or two of the supervisory personnel who did testify were former charge nurses, they had been removed from this position for some time prior to the period in question and prior to the date of trial.

After weighing all of the testimony, observing the demeanor of the witnesses and judging the reasonableness of their testimony, the Court finds that the contentions of the defendant are without merit or supporting evidence. The activities of the male nurse attendants which the defendant contends requires extra effort are summarized as follows: (a) mopping floors, (b) transporting bodies to the morgue, (c) assisting the undertaker in release of bodies from the morgue, (d) moving helpless patients into and out of bed, (e) transporting large gas cylinders to and from the storage area and patients' bedside, (f) delivering heavy supplies to wards, (g) changing mattresses, (h) transporting stretcher patients to and from the operating rooms, the emergency room and the admission office, and (i) placing helpless patients in the bathtub. Special emphasis is placed upon the fact that male nurse attendants were called for temporary emergency duty to other areas of the hospital. After performing temporary emergency services, they returned to their regular stations.

Although it may be true that these extra duties were to be assigned only to male nurse attendants, the proof shows that both nurse aides and nurse attendants performed and assisted each other

in performing these aforementioned tasks. The Court notes that occasionally an emergency would arise which required the expenditure of a special effort on the part of the nurse attendants without any assistance on the part of the nurse aides. However, the general practice and general experience in this particular hospital indicates that such events arose only occasionally. In the general operation of the hospital, both the female nurse aides and the male nurse attendants were called upon and did perform these services as a unit without regard to job classification.

## CONCLUSIONS OF LAW

The Court concludes the following:

 (1) The duties performed by the nurse aides and nurse attendants are substantially identical.

(2) The defendant having stipulated that the jobs are equal in terms of skill, responsibility and working conditions, failed to sustain its burden of proof that the alleged additional duties, as performed, rendered the job unequal in terms of effort. See Shultz v. Wheaton Glass Co., 421 F.2d 259 (3rd Cir. 1970).

(3) The defendant has violated § 6(d) and § 15(a)(2) of the Fair Labor Standards Act of 1938, as amended.

(4) The 115 female nurse aides are entitled to be paid the sum of $68,949, as stipulated.

In reaching this decision, the Court was not persuaded that the pay differential was justified by any occasional extra effort expended by the male attendants. The question of occasional extra effort as justification for pay differential has been, in the opinion of this Court, correctly dissected and resolved by the Fifth Circuit Court of Appeals.

"The equal effort criterion has received substantial play in the reported cases to date. As the doctrine is emerging, jobs do not entail equal effort, even though they entail most of the same routine duties, if the more highly paid job involves additional tasks which (1) require extra effort, (2) consume a significant amount of the time of all those whose pay differentials are to be justified in terms of them, and (3) are of an economic value commensurate with the pay differential. We are persuaded that this approach to the application of the statutory 'equal effort' criterion is in keeping with the fundamental purposes of the Equal Pay Act, and adopt it here. Employers may not be permitted to frustrate the purposes of the Act by calling for extra effort only occasionally, or only from one or two male employees, or by paying males substantially more than females for the performance of tasks which command a low rate of pay when performed full time by other personnel in the same establishment." Hodgson v. Brookhaven General Hospital, 436 F.2d 719, 725 (5th Cir. 1970).

 In connection with the investigation of the defendant, minor underpayment of wages in other categories was discovered. This defendant made no question about its obligation to comply with the Fair Labor Standards Act, and immediately paid said amount. The defendant has maintained its position, based on competent legal advice, that it was not guilty of discrimination in the payment of salaries to the female nurse aides and the male nurse attendants. This was based on what it and its attorney thought was the proper application of the statutory law. The defendant is an outstanding medical institution consisting of both a medical school and a hospital. Based on the testimony in this record, this Court can find no indication that this defendant has intended to violate the law in the past or has any intention of violating the law in the future. Therefore, by reason of the discretion vested in this Court, this Court does not find justification for the issuance of an injunction, and the application therefor is hereby denied.

An appropriate order will be prepared by the attorney for the plaintiff, submitted to the attorney for the defendant, and then to the Court for approval.