**John T. DUNLOP, Secretary of Labor, United States Department of Labor, Plaintiff,**

v.

**ALLEGHENY COUNTY INSTITUTION DISTRICT, doing business as John J. Kane Hospital, Defendant.**

**Civ. A. No. 74–1153.**

United States District Court, W. D. Pennsylvania.

Oct. 17, 1975.

Joan M. Roller, U.S. Dept. of Labor, Philadelphia, Pa., for plaintiff.

Thomas H. M. Hough, Allegheny County, Dept. of Law, Pittsburgh, Pa., for defendant.

### OPINION AND ORDER

MARSH, District Judge.

This case arises under the Equal Pay Act of 1963, 29 U.S.C. § 206(d)(1)[1] which added to § 6 of the Fair Labor

---

[1]. "No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are per-formed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex: Provided, That an employer who is paying a wage rate differential in violation of this subsection shall not, in order to comply with the provisions of this subsection, reduce the wage rate of any employee."

Standards Act of 1938 the principle of equal pay for equal work regardless of sex. It is our opinion that the action should be dismissed because the wage differential between three male barbers licensed by the Commonwealth of Pennsylvania, and three female beauticians licensed by the Commonwealth, all employed by the defendant hospital, was based on factors other than sex; principally the neutral factor of hiring members of two distinct licensed professions, trained by different type schooling, and whose jobs require unequal skill, effort and responsibility. The professional differential itself, we believe is excepted under the catchall exception (iv) as "a differential based on any other factor than sex." [2]

■ It is established that the Secretary bears the burden of proving equality of work and unequal pay; if he sustains that burden the defendant employer has the burden of proving that the criterion for discrimination was some factor other than sex. *Corning Glass Works v. Brennan*, 417 U.S. 188, 195–196, 94 S.Ct. 2223, 41 L.Ed.2d 1 (1974); *Shultz v. Wheaton Glass Co.*, 421 F.2d 259, 266 (3rd Cir. 1970).

■ In our opinion the Secretary failed to sustain his burden; but even if it is found that he did, the defendant employer proved that the principal criteria for pay discrimination between licensed barbers and licensed beauticians was attributable to the obvious difference in special training and, at the hospital, in dissimilar skills, efforts and responsibilities of these separate and distinct professions. These variants are factors other than sex.[3] Accordingly, fixing wages for these different professions is a separate function performed by the County Salary Board. (Tr. 97–98).[4]

The following facts have been stipulated by the parties or found from the evidence.

This action was instituted by the Secretary of Labor, United States Department of Labor, under the provisions of the Fair Labor Standards Act of 1938, as amended (29 U.S.C. 201 et seq.), hereinafter referred to as the Act. The plaintiff has alleged that the defendant has violated section 6(d) of the Act by paying its female beauticians at lower rates than it paid its male barbers for the performance of work which required equal skill, effort and responsibility and which was performed under similar working conditions. (Tr. 3–4).

Plaintiff seeks the restraint of continued violations of the Act and further seeks to have the defendant restrained from withholding any back wages owed to its employees as a result of the aforesaid alleged violations. (Tr. 4).

The defendant, Allegheny County Institution District, maintains an office at Room 101 Allegheny County Courthouse, Pittsburgh, Pennsylvania. (Tr. 4).

John J. Kane Hospital is a geriatric hospital operated by the Allegheny County Institution District, a political subdivision of the Commonwealth of Pennsylvania. (Tr. 7). The hospital is located on Vanadium Road, Scott Township, Pennsylvania.

Defendant at all times relevant hereto has employed in excess of 2,000 employees. A significant, but undetermined number of employees are regularly and recurringly engaged in interstate

---

2. The Pennsylvania statutes make it unlawful for any person to practice beauty culture or to follow the occupation of barbering unless he or she shall have obtained a certificate of registration. 63 P.S. §§ 508, 551.
The Pennsylvania statutes contain separate and distinct definitions of beauty culture and of barbering. 63 P.S. §§ 507–563. In effect these statutes prohibit the defendant from using its barbers as beauticians.

3. It was established that if female barbers were hired by the defendant they would receive the same salary as male barbers, and if male beauticians were hired, they would receive the same salary as female beauticians. (Tr. 94, 112, 162–166).

4. Barbers and beauticians employed in state institutions receive equal pay. (Tr. 172 et seq.) (PX1).

commerce or in the production of goods for commerce. More specifically, defendant's employees receive, handle or otherwise work on medical and surgical equipment, drugs, foodstuffs, maintenance equipment and supplies, furniture and like items which have been received from points outside of the Commonwealth of Pennsylvania. Defendant's office employees are engaged in the receipt, preparation, and forwarding of letters, bills, invoices and like documents to or from points directly outside the Commonwealth of Pennsylvania. (Tr. 4–5).

Defendant is an enterprise engaged in commerce within the meaning of section 3(s)(4) of the Amendments to the Fair Labor Standards Act of 1966, (29 U.S.C. 203(s)(4)). (Tr. 5).

Plaintiff claims the difference between wages received by certain barbers employed by defendant and those wages received by Ann K. DeBone, Margaret Magliocca and Beatrice Adams from December 6, 1971 to the present time.

There are approximately 1,300 female patients at the hospital.[5]

All beauticians work from 7:30 a. m. to 3:30 p. m. Monday through Friday. (Tr. 53). The work of the beauticians is divided between the floors in the women's sections of the hospital and the beauty shop. Between 50% and 75% is spent cutting hair and the remaining time is spent in the beauty shop. (DXF). (Tr. 60, 116, 127). The beauticians are required to wear a uniform purchased with their own funds. (Tr. 53–54).

The female beauticians are engaged in basic hair care for female patients. (Tr. 5).

All the female beauticians are licensed by the Pennsylvania Bureau of Professional Licensing. (Tr. 5).

There are approximately 700 male patients at the hospital.[6] (Tr. 5).

All the male barbers work from 8:00 a. m. to 4:00 p. m. Monday through Friday. (Tr. 13, 25). Usually in the morning, the barbers work on the floors of the hospital in the men's sections; in the afternoon one barber works in the barber shop while the other two work on the floors of the hospital. The barbers wear aprons provided by the hospital. (Tr. 26).

The barbers are engaged in basic hair care for the male patients. (Tr. 5).

All the barbers are licensed by the Pennsylvania Bureau of Licensing. (Tr. 5).

The average patient age at the hospital is 76.5 years. (Tr. 7–8).

The barbers and beauticians work as separate and distinct groups; there is no interchangeability between them; and there is no realistic common supervision. (Tr. 52, 102–103). Mr. Magliocca, the working supervisor, supervises only to the extent of seeing that the time sheets are filled in and for processing complaints. He admitted his inability to supervise the work product of the beauticians. (Tr. 103–104). He does not tell the barbers how to perform their work. (Tr. 11). He does not receive extra pay.

Beauticians and barbers are scheduled to work pursuant to the collective bargaining agreement between the County of Allegheny and Service Employees International Union. AFL–CIO–CLC. (Tr. 6–7).

The tools used by barbers are scissors, thinning shears, combs, a clipper, a trimming clipper and neck duster. The barbers carry their tools to the floors in a kit. (Tr. 15–16, 27).

The tools used by beauticians are scissors, thinning shears, combs, brushes, various chemical lotions, oils and creams, clippers, bobby pins, clips, irons, rollers and electric razors. They keep a hair dryer and heater in the beauty

---

5. As of August 21, 1974, there were 1,329 women patients in the hospital. (DXE).

6. As of August 21, 1974, there were 727 male patients in the hospital. (DXE).

shop. The beauticians convey their tools to the floors on a cart. (Tr. 55–56).

The skills employed by the beauticians are cutting and styling hair on some of the elderly women patients who do not have or want long hair. In addition, 25% to 50% of their time is spent in the beauty shop giving permanents, hair sets, straightening and relaxing hair. (Tr. 60, 82). On occasion they shampoo a patient (Tr. 60), and do nail polishing and nail filing (Tr. 179) when requested. Many of the women patients need to be shaved; the beauticians shave them with an electric razor. (Tr. 58, 73–74). The beauticians neither cut the hair nor shave the male patients.

The skills used by the barbers are strictly barbering the hair of all the male patients except four or five. (Tr. 101–102). They do not shave the men as a general rule. The hospital aides shave the men; on occasion the barbers will help out if there is a problem. (Tr. 16, 21, 30, 47, 118–119). One half to two hours every two weeks they teach the hospital aides how to shave. Hair cutting is done on the floors and in the barber shop.

The barbers are not trained to give permanents and hair sets. They are not trained to straighten hair. They do not shampoo or manicure patients or use chemical lotions. They do not cut the hair of female patients. They are not trained to cut female hair or to apply beauty techniques. (Tr. 41–42). Cutting the hair of ladies requires a substantially different skill than cutting the hair of men.

Both barbers and beauticians perform their work under similar working conditions. Both report scalp diseases to hospital nurses. Both perform their respective skills for bedridden patients and those in geriatric chairs. At the end of each day both clean their tools and do some light cleaning of their respective shops.

The duties performed by the barbers and beauticians are different in that the occupations are different; each craft has different duties and different work performance, expectations, effort and responsibilities, as classified; each requires a special independent course of study and a separate license from the Commonwealth of Pennsylvania.

Not only do barbers and beauticians at the hospital perform different duties involving different skills, they expend different efforts in performing their different techniques. Unlike the barbers, the beauticians use several tools in addition to the basic scissors, clippers and combs which use requires more effort of performance. In addition barbers on an average spend ten to twenty minutes cutting the hair (Tr. 27) of a male patient, whereas a beautician spends thirty to forty minutes to complete a hair straightening process (Tr. 75), and one hour to an hour and fifteen minutes to give a hair set (Tr. 78). The time spent by the two crafts per patient is clearly unequal, thus requiring unequal effort in performing different work.

The responsibility of barbers is to cut the hair of over 700 male patients. (Tr. 101–102). The responsibility of the beauticians is to cut the hair and perform additional beauty skills to the female patients who need or request their services. (Tr. 66–67, 126–127). It is noted that one of the beauticians, Beatrice Adams, was off for 35 consecutive days (October 23 through December 1, 1972) and apparently it was unnecessary to hire a substitute. (DXF). The beauticians, unlike the barbers, do not have the responsibility to serve every female patient in the hospital. Female patients with long hair do not receive haircuts; not all request beauty techniques.

During the period in which violations are alleged to have occurred, the female beauticians were paid $165.00 a month less than the male barbers. (Tr. 6) (DXD).

At all times relevant, the defendant was aware of the provisions of the Act as amended.

## CONCLUSIONS OF LAW

The court has jurisdiction of the parties and the subject matter of this cause of action pursuant to the provisions of the Fair Labor Standards Act of 1938, as amended. (29 U.S.C. 201 *et seq.*) (Tr. 6).

Defendant's employees, as described herein, were "engaged in commerce" and "in the production of goods for commerce" and included employees handling or otherwise working on such goods within the meaning of the Act. (Tr. 6).

Defendant is an enterprise engaged in commerce and in the production of goods for commerce within the meaning of section 3(s)(4) of the Act under the Fair Labor Standards Act Amendments of 1966 (80 Stat. 830), 29 U.S.C. 203(s)(4). (Tr. 6).

The work performed by the barbers is substantially different than the work performed by the beauticians in that each is a separate and distinct profession; each requires a special, independent course of study; each requires a separate license from the Commonwealth of Pennsylvania, and each have different skills, duties, work performance and responsibilities, and each exerts unequal effort in the performance of their jobs.

The wages paid to barbers and beauticians are not relevant to the purpose of the Act; the occupations are not substantially similar; they are two different jobs, not one job being done by employees of both sexes, and therefore not equal within the purview of the Act.

The differential is based on a factor other than sex. See exception (iv), footnote 1.

Congress has not provided that when employees of one sex are members of a licensed profession unrestricted as to sex and provide more skill and effort than do employees of the opposite sex who are members of another licensed profession unrestricted as to sex, their common employer must provide equal pay.

The defendant is not in violation of the Act. The complaint should be dismissed and judgment entered in favor of the defendant.