**ALD-069**                                          NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-3497
_____

HEILIA V. FAIRCLOUGH,
                                        Appellant

v.

WAWA, INC.
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 09-02153)
District Judge:  Honorable Mary L. Cooper
_____

Submitted for Possible Dismissal Pursuant to 28 U.S.C. § 1915(e)(2)(B)
or Summary Action Pursuant to Third Circuit LAR 27.4 and I.O.P. 10.6
December 16, 2010
Before:  SCIRICA, HARDIMAN and VANASKIE, Circuit Judges

(Filed: December 23, 2010 )
_____

OPINION OF THE COURT
_____

PER CURIAM.

        Heilia Fairclough appeals pro se from the District Court's order granting summary

judgment to Wawa, Inc. ("Wawa") on her claims of employment discrimination, and

denying her motion for summary judgment.  For the following reasons, we will

summarily affirm.

I.

Fairclough, a sixty-plus year old, black woman of Jamaican nationality, was employed as a part-time customer service associate with Wawa beginning in April 2006. The gist of her complaint is that she was discriminated against when the management staff and employees at the store where she worked did not treat her courteously, sabotaged her so that she would get written up for violating Wawa policy, and conspired against her to have her terminated.

On August 13, 2008, Christine Paustian, a store manager, reported Fairclough to the store's safety manager for failing to properly store knives. Fairclough was given a disciplinary notice for the safety violation. In response to the violation, Fairclough wrote several memos to Wawa management in which she contended that "the knives were turned over by [Paustian] to create problems for me," even though Fairclough "[could not] say [so] with any degree of certainty, . . . because [she] did not see [Paustian] do the act." (Pl.'s Ex. 21 at 17 & 22.) Fairclough also claimed that Paustian had assaulted her during the incident by waving her hand in front of Fairclough's face. Ray Crespo, the store's general manager, and Dwight Newell, the general manager in training, met with Fairclough in response to the incident and reviewed various safety procedures and policies with her.

Over the course of the next month, Fairclough was written up on two additional occasions for violating Wawa policies, once for failing to wear gloves when handling food and once for failing to bring in a doctor's note when she called out sick. Although

2

she acknowledged engaging in the conduct underlying those write-ups, she wrote memos to management explaining why, in her opinion, the discipline was not warranted. During the same time period, she experienced additional conflicts with co-workers, especially Paustian, whom she accused of standing too close to her on one occasion, in an alleged attempt to get Fairclough to drop the macaroni and cheese she was handling at the time.

Fairclough was written up again on September 29, 2008, for failing to log the temperature of the store's refrigerated sandwich station in accordance with her duties. Although she acknowledged that she failed to log the temperature, she wrote another memo to management arguing that Paustian tampered with the temperature on the unit so that the food would spoil and Fairclough would be blamed for it. She claimed that Paustian was harassing her and accused Crespo and Newell of joining in the harassment by writing her up and ignoring her claims of sabotage. Crespo determined that Fairclough's allegations against Paustian were unsubstantiated and wrote her up for falsely accusing a co-worker and creating a hostile work environment. During a discussion with Crespo about the incident, Fairclough called him "illiterate" because she felt that he was not reading her memo thoroughly.

In light of the situation, Fairclough initiated Wawa's conflict resolution process. Virginia Lemons, a human relations specialist, interviewed Fairclough and several other employees. The employees indicated that it was Fairclough who was responsible for creating a difficult work environment by, among other things, claiming discrimination whenever she was asked to do a task consistent with her job duties. Lemons concluded

3

that Fairclough was incapable of getting along with her co-workers and that she had been insubordinate to management staff. She also found that Fairclough failed to follow policies concerning safety and food spoilage.

Based on Lemons's findings, Crespo terminated Fairclough, who was sixty-one years old at the time, on October 29, 2008. Prior to her termination, Fairclough had been participating in Wawa's Employees' Savings (401K) and Profit Sharing Plan. If Fairclough had remained employed with Wawa until age sixty-two, she would have become vested in the plan and would have received $24.23 in contributions from Wawa. Fairclough appealed her termination within Wawa's conflict resolution program, but the decision to terminate was upheld.

After exhausting her administrative remedies, Fairclough filed a pro se complaint against Wawa, asserting a hostile work environment claim under Title VII, a claim of wrongful termination in violation of the Age Discrimination in Employment Act ("ADEA"), and a claim under the Equal Pay Act. She predominately asserted that she was mistreated due to Wawa's failure to provide a "bias free environment," and alleged that her termination was motivated by discrimination.

The parties cross-moved for summary judgment. The District Court granted summary judgment in favor of Wawa and denied Fairclough's motion. The gist of its opinion was that Fairclough had failed to produce any evidence that the conditions of which she complained or her termination were motivated by discrimination due to her

4

race, nationality, age, or Wawa's desire to avoid contributing to her retirement.[1]

Fairclough subsequently moved for relief from the District Court's judgment, pursuant to Federal Rule of Civil Procedure 60(b)(1). The District Court denied that motion, and Fairclough timely appealed.

## II.

The District Court possessed jurisdiction pursuant to 28 U.S.C. § 1331. Our jurisdiction arises under 28 U.S.C. § 1291. Before we can proceed with the merits of Fairclough's appeal, we must first rule on her motion to proceed in forma pauperis. "[I]n order for a court to grant *in forma pauperis* status, the litigant seeking such status must establish that [she] is unable to pay the costs of [her] suit." Walker v. People Express Airlines, Inc., 886 F.2d 598, 601 (1989). Fairclough's affidavit of poverty reflects that her income barely covers her expenses and that her savings, if any, are minimal. Accordingly, she has established an inability to pay the applicable fee and we will grant her motion. See Adkins v. E.I. DuPont de Nemours & Co., 335 U.S. 331, 339 (1948) (one need not be "absolutely destitute" to proceed in forma pauperis).

## III.

Having concluded that Fairclough may proceed in forma pauperis, we turn to whether summary affirmance is appropriate.[2] "This court reviews the District Court's

---

[1] In her summary judgment motion, Fairclough alleged that Wawa defamed her in addition to discriminating against her. Fairclough was not entitled to relief on that claim because she did not adequately plead a defamation claim nor did she move to amend her complaint to add one.

[2] In making that assessment, we will consider Fairclough's pro se brief, which we take to

decision resolving cross-motions for summary judgment de novo." Startzell v. City of Phila., 533 F.3d 183, 192 (3d Cir. 2008). Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[3] Fed. R. Civ. P. 56(c)(2). We must "view all evidence and draw all inferences in the light most favorable to the non-moving party . . . ." Startzell, 533 F.3d at 192. Since we conclude that no substantial question is raised by Fairclough's appeal, we will summarily affirm. See 3d Cir. LAR 27.4; 3d Cir. IOP 10.6.

A. Equal Pay Act

The District Court properly granted summary judgment on Fairclough's Equal Pay Act claim. The Equal Pay Act prohibits employers from discriminating based on sex "by paying wages to employees . . . at a rate less than the rate at which he pays wages to employees of the opposite sex . . . for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions . . . ." 29 U.S.C. § 206(d)(1). Since Fairclough's Equal Pay Act claim is premised on her assertion that she was paid less than an employee of the same sex, not of a different sex, and since the record is devoid of any evidence that Wawa paid individuals of different sexes unequally, her claim necessarily fails. See Shultz v. Wheaton Glass Co., 421 F.2d 259, 264 (3d Cir. 1970) (describing Equal Pay Act as "the

---

be her response to the Clerk's order inviting her to submit argument in support of her appeal. Accordingly, we instruct the Clerk to file her informal brief.
[3] The text of Rule 56 changed as of December 1, 2010; however, we will apply the

6

culmination of many years of striving to eliminate discrimination in pay *because of sex*")
(emphasis added).

B.      <u>Hostile Work Environment</u>

The District Court also properly granted summary judgment to Wawa on

Fairclough's hostile work environment claim. In order to establish that she was subjected

to a hostile work environment in violation of Title VII, Fairclough must establish that

"(1) [she] suffered intentional discrimination because of . . . her membership in the

protected class; (2) the discrimination was pervasive and regular; (3) the discrimination

detrimentally affected [her]; (4) the discrimination would have detrimentally affected a

reasonable person of the same protected class in that position; and, (5) the existence of

respondeat superior liability." <u>West v. Phila. Elec. Co.</u>, 45 F.3d 744, 753 (3d Cir. 1995).

It is clear that Fairclough did not get along with Wawa's management staff,

Paustian in particular. However, Lemons's interviews revealed that Fairclough was the

employee causing discord in the workplace. Fairclough contends that those reports are

false, largely based upon her belief that everyone was conspiring against her. She also

asserts that the investigation was "biased" because, in her opinion, Lemons failed to ask

sufficient questions of the interviewees. Even leaving aside the fact that Fairclough's

allegations of sabotage are unsubstantiated and accepting her version of the underlying

events, there is nothing in the record from which a reasonable juror could infer that the

---

version of the rule in effect at the time the parties moved for summary judgment.

way Fairclough was treated at work had anything to do with her race or nationality.[4]

That Fairclough experienced personality conflicts resulting in a less than ideal work environment is simply not actionable under Title VII. See Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006) (explaining that Title VII is not a civility code for the workplace); see also West, 45 F.3d at 753 (Title VII is violated by "a work environment abusive to employees *because of* their race, gender, religion, or national origin") (quotations omitted and emphasis added).

Furthermore, other than the incident with the knives, which she believes to be a product of sabotage, Fairclough admits to engaging in the conduct for which she was written up even though, in her opinion, the discipline was unwarranted. She likewise acknowledges calling Crespo "illiterate." The record therefore reflects that Fairclough was disciplined and terminated for exactly the reasons proffered by Wawa and not due to any racially motivated mistreatment. The District Court thus correctly concluded that summary judgment was warranted on Fairclough's Title VII claim. See Hedberg v. Ind. Bell Tel. Co., 47 F.3d 928, 932 (7th Cir. 1995) ("Speculation does not create a *genuine* issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment.").

---

[4] That conclusion is bolstered by Fairclough's own deposition testimony. When asked about her claims, Fairclough stated:
> "I just know I was treated very badly. I don't know if there's another name for it. I'm very welcome to accept that, but you have to choose something so the word I chose was discrimination. . . . [T]here is no other label for that when people treat you badly."

(Pl.'s Dep. at 21:2-8.)

8

C.    ADEA Claim

Summary judgment was also warranted on Fairclough's ADEA claim, which is governed by the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  Smith v. City of Allentown, 589 F.3d 684, 689 (3d Cir. 2009).  "When the plaintiff alleges unlawful discharge based on age, the prima facie case requires proof that (i) the plaintiff was a member of the protected class, i.e., was 40 years of age or older, (ii) that the plaintiff was discharged, (iii) that the plaintiff was qualified for the job, and (iv) that the plaintiff was replaced by a sufficiently younger person to create an inference of age discrimination."  Keller v. Orix Credit Alliance, Inc., 130 F.3d 1101, 1108 (3d Cir. 1997) (en banc) (citations omitted).  Once a plaintiff makes out a prima facie case, the burden shifts to the defendant "who must then offer evidence that is sufficient, if believed, to support a finding that it had a legitimate, nondiscriminatory reason for the discharge."  Id.  If the defendant satisfies that burden, the plaintiff can only overcome summary judgment with evidence "that the employer's proffered rationale was a pretext for age discrimination."  Smith, 589 F.3d at 690.

Assuming, arguendo, that Fairclough has established a prima facie case based on her testimony that she was replaced by a younger individual, her ADEA claim fails because she lacks any evidence of pretext.  Wawa articulated legitimate nondiscriminatory reasons for terminating Fairclough that are supported by the record, namely, she could not get along with other employees, created an uncomfortable working environment, and was insubordinate to management.  There is simply no evidence from

9

which a jury could infer that Wawa's decision to terminate Fairclough was motivated by her age or her participation in Wawa's retirement plan. Indeed, when asked at her deposition why she believes she was subjected to age discrimination, Fairclough responded: "Well, the economy was very bad. And people were getting rid of older people. You know, I don't know. And I have to assume that's part of it . . . ." (Pl.'s Dep. at 33:9-11.) Fairclough's speculation is an insufficient substitute for evidence from which a reasonable juror could infer discriminatory intent. Summary judgment was therefore warranted on her ADEA claim.

In sum, Fairclough's appeal presents no substantial question. Accordingly, we will summarily affirm.[5]

---

[5] Fairclough also appeals the District Court's denial of a motion for default judgment, which she filed before Wawa responded to her complaint, and her Rule 60(b)(1) motion for relief from judgment, in which she sought relief from the District Court's summary judgment ruling because she "inadvertently" omitted certain documents from her filings that allegedly would have supported her claim. We conclude that the District Court did not abuse its discretion in denying either of those motions, since its reasons for doing so were sound. Further, we note that Fairclough would not have been entitled to entry of default, let alone default judgment, because Wawa timely returned a waiver of service to Fairclough and thereafter timely answered the complaint. See Fed. R. Civ. P. 4(d)(1) & (3).