**Beverly H. NITTERRIGHT, Plaintiff,**

v.

**W. Graham CLAYTOR, Jr., Defendant.**

**Civ. A. No. 76–0998.**

United States District Court, District of Columbia.

May 23, 1978.

Laura J. Rayburn, Washington, D. C., for plaintiff.

Earl J. Silbert, U. S. Atty., Robert N. Ford, Asst. U. S. Atty., Eric B. Carriker, Sp. Asst. U. S. Atty., Peter J. Levine, Asst. U. S. Atty., Washington, D. C., for defendant.

## MEMORANDUM OPINION

WADDY, District Judge.

On March 29, 1974, plaintiff, Beverly J. Nitterright, an Accounting Technician employed by the Department of the Navy, filed a formal administrative complaint of sex discrimination. Plaintiff alleged a failure and refusal on the part of defendant[1] to compensate her at a rate of pay equal to that received by male employees performing the same work.

---

1. Defendant, W. Graham Claytor, Jr. is Secretary of the Navy and is sued in his official capacity. He has been automatically substituted for original defendant J. William Middendorf, II, pursuant to Federal Rule of Civil Procedure 25(d)(1).

Plaintiff's administrative complaint, as well as her later charge of reprisal because she had filed that complaint, were ultimately resolved by the Appeals Review Board (ARB) of the Civil Service Commission. The ARB found both sex discrimination and reprisal and made specific relief recommendations.

Having exhausted her administrative remedies, plaintiff filed this suit pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* (Title VII) and the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.,* as amended by the Equal Pay Act of 1963, 29 U.S.C. § 206.

Plaintiff contends that defendant unlawfully failed to pay her at a rate equal to that paid to male employees performing similar work and engaged in acts of retaliation and reprisal because of her administrative sex discrimination complaint. She further contends that the remedial action recommended by the ARB does not make her whole; that defendant failed to take the remedial action that was recommended by the ARB, and that additional relief should be awarded by this Court.

Currently pending is plaintiff's motion for summary judgment, on which memoranda have been submitted by the parties and argument heard.[2]

Preliminarily, the Court notes that both parties are satisfied that all relevant factual evidence is contained in the administrative record made a part of this action and other documents on file, and that no further discovery is desired.[3]

### The Factual Background

Plaintiff was hired as an Accounting Technician on July 28, 1971, in the Command Accounting Branch (CAB), Financial Services Division, Supply and Fiscal Office at the Washington, D. C. Navy Yard, at a GS–5 level. At that time, there were two male employees, Mr. Robert W. French and Mr. William V. Hurte, who were performing substantially similar duties and functions as those assigned to plaintiff. Both men were being paid at the GS–6 level. (Both had formerly been classified as GS–5's, but after competitive advertising in March of 1971 of two newly-established positions in the CAB, both had been selected for the new GS–6/7 slots.)

In May of 1972, having completed one year in the GS–6 grade, both Mr. French and Mr. Hurte were promoted to GS–7. In October of 1972, Mr. French resigned and his position remained vacant. Approximately one year later, in October, 1973, Miss Jean Marcellous was hired as a GS–5 level Accounting Technician, but assigned to the vacant GS–6/7 slot. Plaintiff remained at the GS–5 pay grade.

After unsuccessful personal attempts to either have her position upgraded to her level of duties, or to have the higher-level duties removed from her responsibilities, plaintiff contacted an Equal Employment Opportunity Counsellor in January, 1974. At the suggestion of the EEO Counsellor, a desk audit of the Accounting Technician positions in the CAB was performed. The audit indicated that all three employees, Mr. Hurte, Miss Marcellous, and Ms. Nitterright were performing GS–7 level work and concluded the two women were misassigned.

On March 29, 1974, plaintiff filed her formal EEO Complaint; on April 11, 1974, her higher level duties were removed.

About this same time, the other GS–5 position in the CAB was competitively advertised at an upgraded GS–6/7 classification, and Miss Marcellous, the incumbent, was selected to fill the position.

Following a review and investigation of plaintiff's EEO Complaint, the Comman-

---

**2.** At the hearing on July 7, 1977, the Court also considered defendant's motion to amend the answer to the complaint and defendant's cross-motion for partial summary judgment. Ruling from the bench, defendant's motion to amend its answer to the complaint was granted and the cross-motion for partial summary judgment denied.

**3.** This action was filed June 7, 1976. Events occurring subsequent to that date which are relevant to the issues have been addressed by both parties without objection.

dant, Naval District, Washington, D. C., issued his Proposed Disposition which concluded there was neither discrimination nor harassment. The Proposed Disposition authorized plaintiff's transfer to another division due to the "unpleasant work atmosphere." Dissatisfied with the Proposed Disposition of her complaint, plaintiff requested a hearing and decision by the Secretary of the Navy (Employee Appeals Review Board). On January 7, 1975, an EEO Complaints Examiner held an informal agency hearing.

Meanwhile on November 18, 1974, pursuant to the Commandant's decision, plaintiff was reassigned to the Navy Stock Funds Accounting Section, Field Accounting Branch, Financial Services Division, at a GS–5 level. On March 16, 1975, plaintiff was promoted to a GS–6 in the Navy Stock Funds Accounting Section.

By letter dated June 12, 1975, plaintiff was advised that the Secretary had adopted the recommendations of the Complaints Examiner finding no sex discrimination, but concluding plaintiff had been subjected to harassment and reprisal by a former supervisor. The only corrective action taken pursuant to this final agency decision was to remove a "Letter of Requirement" previously issued to plaintiff from her personnel files and to enroll her supervisor in "supervisory personnel management and EEO training courses." (Plaintiff's Exhibit 11, at 2.) Plaintiff elected to appeal this decision to the ARB.

In early 1976, while plaintiff's appeal was pending before the ARB, the CAB was reorganized. At the time of the reorganization, the existing CAB staff slots were: Acting Head, GS–510–11/12, filled by Mr. J. M. Whitacre; Supervisor, GS–525–9, held by Mr. J. Mosely; and two Accounting Technicians, GS–525–7, held by Mr. Hurte and Miss Marcellous. The reorganization eliminated the Supervisor's position, retained the position of Head, increased the number of Accounting Technicians to three, and reclassified the Accounting Technician positions as GS–525–8. The reclassified positions were competitively advertised, and plaintiff filed an application for one of them.

On May 11, 1976, the ARB notified plaintiff of its decision reversing the Secretary, and concluding that plaintiff had been the victim of sex discrimination.

The relevant findings and conclusions of the ARB are as follows:

The Board finds . . . that the evidence of record reflects that complainant was the victim of disparate treatment in that she performed the same work as the male GS–7s for almost three years, but for GS–5 pay. The agency was aware of this situation but condoned the action by not up-grading the position or immediately removing the higher-level duties. The Board is satisfied that the agency allowed the situation to continue, despite its knowledge that complainant was performing GS–7 level duties, until after the audit of February 1974, precipitated by her contact with the counselor.

With regard to issue (2), whether complainant was discriminated against on a basis of sex when the agency eliminated her higher-level duties rather than promoting her to GS–7, the record shows that an audit, previously mentioned, found her to be "misasigned." [sic] . . . the higher-level duties were only removed from the complainant.

In view of the almost three years that complainant was performing these duties and was not promoted, the Board finds *prima facie* evidence of sex discrimination . . . the agency has not overcome its burden of showing no discrimination. The action of the agency leads the Board to a conclusion that the duties were removed as a part of a scheme to prevent complainant's promotion to a level which she had previously performed, but for which she was not paid. (Plaintiff's Exhibit 12, at 3–4.)

The ARB reversed the Secretary's determination and recommended the following relief: [4]

(1) That complainant's higher-level duties which she performed prior to the audit of February 1974 be restored;

(2) That complainant be retroactively promoted to GS–6 effective August 1, 1974, the date on which Miss Marcellous was upgraded to GS–6;

(3) That she be promoted to GS–7, after 1 year as a GS–6, if the positions occupied by the male incumbents remained at the GS–7 level, unless in the interim the jobs and grade levels have been changed. [Plaintiff's Exhibit 12, at 4–5.]

Pursuant to the ARB decision, plaintiff was retroactively promoted to grade 6, effective August 4, 1974, to her Stock Fund Accounting Section position as an Accounting Technician, and received a back pay award to that same date. On August 17, 1976, she was promoted to a GS–7 position in that same branch which had been dormant, but was reactivated to comply with the ARB decision.

Subsequent to the ARB's decision and the filing of this civil action on June 7, 1976, several additional relevant events have taken place.

On July 2, 1976, plaintiff's application for one of the reclassified GS–7/8 Accounting Technician positions in the newly re-organized CAB was rejected although she had been found "highly qualified." The Acting Head was selected for the GS–510–11/12 position as Head, and incumbents Mr. Hurte and Miss Marcellous were selected to fill two of the three Accounting Technician positions. Plaintiff was not appointed to one of the positions because it was felt that it would be inappropriate "to interject a non-competitive placement into the merit promotion procedures." (Defendant's Exhibit 2, at 2.) Plaintiff immediately filed a Charge of Reprisal for defendant's failure to select her for the vacant GS–7/8 position

in the CAB. On September 9, 1976, she was advised of the agency's adverse decision on her Charge of Reprisal.

On June 1, 1977, defendant advertised an opening for an Accounting Technician, GS–7/8 in the CAB. Plaintiff again applied for the position, and filed an application for a preliminary injunction on June 21, 1977, in this action seeking an injunction restraining defendant from filling the position pending resolution of this litigation. Following a hearing, plaintiff's application for a preliminary injunction was denied because she had failed to show irreparable injury. *Virginia Petroleum Jobbers Ass'n. v. Federal Power Commission,* 104 U.S.App.D.C. 106, 259 F.2d 921 (1958); *Sampson v. Murray,* 415 U.S. 61, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974).

Effective September 25, 1977, plaintiff was promoted to the Accounting Technician position in the CAB at a grade 8.[5]

## II. The Contentions of the Parties

Essentially, this is a case in which plaintiff seeks relief in addition to that awarded by defendant pursuant to the ARB order to make her "whole." Defendant contends that she has received all of the relief to which she is entitled.

Plaintiff alleges violations of Title VII and the Equal Pay Act, both of which seek to eliminate employment discrimination. The acts are to be construed in harmony and read in *pari materia. Laffey v. Northwest Airlines, Inc.,* 567 F.2d 429 (D.C. Cir. 1976), *cert. denied,* 434 U.S. 1086, 98 S.Ct. 1281, 55 L.Ed.2d 792 (1978); *Orr v. Frank R. MacNeill & Son, Inc.,* 511 F.2d 166 (5th Cir. 1975), *cert. denied,* 423 U.S. 865, 96 S.Ct. 125, 46 L.Ed.2d 94. Thus, the same "facts may form the basis for redress under both Title VII and the Equal Pay Act if the requirements of each are separately satisfied and the claimant does not reap overlapping relief for the same wrong." *Laffey v. Northwest Airlines, Inc., supra* at 445.

---

**4.** The ARB's decision is mandatory, and an agency must implement the corrective action recommended. 5 C.F.R. § 713.234.

**5.** Supplement to Plaintiff's Motion for Summary Judgment filed with the Court October 21, 1977.

The relief which plaintiff seeks in this action includes:

(1) An injunction against future violations of Title VII and the Equal Pay Act and from future harassment or reprisal against her in exercising her rights under these statutes;

(2) Retroactive promotion to GS–6/7 together with an award of back pay, with interest, effective July 28, 1971;

(3) Restoration of her former position and duties in the CAB as an Accounting Technician, including retroactive promotion to GS–8 and back pay, with interest, to June, 1976.[6]

(4) An award of liquidated damages under the Equal Pay Act equal to her back pay award; and

(5) An award of reasonable attorneys' fees and cost.

Plaintiff contends that the administrative record establishes a *prima facie* case of sex discrimination going back to her date of hiring, July 28, 1971, and that the relief awarded was not in accordance with the ARB order. Defendant contends that the ARB made a finding of sex discrimination *only* with respect to the elimination of plaintiff's higher level duties and that promotion retroactive to August, 1974 was the only appropriate relief because discrimination did not occur until the higher level duties were taken away from her.[7] Any unfair treatment prior to that date, it is contended, should have been subject to the Classification Act, 5 U.S.C. § 5101, *et seq.* Defendant maintains that plaintiff received what she asked for—pay commensurate with her responsibilities, even if the job was in a different section.

Plaintiff further contends that she has not been made whole by the relief afforded her. She asserts that she is statutorily entitled to additional relief in the form of retroactive promotion and back pay.[8] Essentially, plaintiff relies on *Day v. Mathews,* 174 U.S.App.D.C. 231, 530 F.2d 1083 (1976). In that federal employee race discrimination case, the court held that:

> The [Civil Rights Act of 1964, as amended] makes it clear that [retroactive promotion and back pay] are available only where the employee would have received the promotion had he not been the victim of discrimination. From the case law, too, it is plain that the purpose of the back pay award is to make the plaintiff whole—that is to restore him to the position he would have occupied but for the discrimination. 174 U.S.App.D.C. at 233, 530 F.2d at 1085.

Relying on numerous discrimination cases arising in the private sector, the court further held that ". . . a *prima facie* showing of discrimination shifts the burden to the employer to prove that the employee (or applicant) would not have gotten the post in any event, even absent discrimination." 174 U.S.App.D.C. at 233, 530 F.2d at 1085.

### III. Retroactive Promotion

Plaintiff's claim that she is entitled to retroactive promotion is grounded on 42 U.S.C. § 2000e–5(g), made fully applicable to federal employees by 42 U.S.C. § 2000e–16(d). Section 2000e–5(g) provides in relevant part:

> No order of the court shall require . . . the hiring, reinstatement, or promotion of an individual as an employee, or the payment to him of any back pay, if such individual was . . . refused employment or advancement or was suspended or discharged for any reason other than discrimination on the account of race, color, religion, sex, or national ori-

---

6. Although plaintiff's request to have her former position and duties as an Accounting Technician at the CAB restored, including upgrading to grade 8 has been made moot by her competitive selection to that position at a grade 8, plaintiff has not abandoned her request for back pay.

7. Although defendant asserted that it had not discriminated against plaintiff in the answer to the complaint, defendant has apparently abandoned that position and elected to defend the relief actually awarded.

8. *See* 42 U.S.C. §§ 2000e–16(d), 2000e–5(g); 5 C.F.R. § 713.271(b); and 29 U.S.C. § 216(b).

gin or in violation of section 2000e–3(a) of this title.

### A. Retroactive Promotion to GS–6/7

Plaintiff contends that discrimination based on sex first occurred in 1971 when she was hired as an Accounting Technician at the GS–5 pay level. The ARB conclusively found *prima facie* evidence of sex discrimination during the almost three years that plaintiff was performing the same Accounting Technician duties as her male counterpart(s). Defendant has offered no new evidence to indicate there was any other reason for her disparate treatment.

The ARB recommended, and the agency implemented, retroactive promotion to grade GS–6 effective August 1, 1974, the date on which the other female in the CAB was upgraded to that level. Inexplicably, however, retroactive promotion was not granted effective to her date of hiring. In view of the *prima facie* record evidence that plaintiff had been the victim of disparate treatment since the date she was first employed, the Court agrees with plaintiff that additional relief is necessary to make her whole. *Day v. Mathews, supra.*

When plaintiff was hired for the CAB position, the two other Accounting Technician positions were held by males performing work identical to that of plaintiff, and were classified GS–6/7 with an automatic promotion to GS–7 upon completion of one year's satisfactory performance. Accordingly, the Court concludes that plaintiff should be retroactively promoted to grade GS–6, effective her first date of employment, July 28, 1971. For the same reason, plaintiff should be retroactively promoted to grade 7, effective July 28, 1972, inasmuch as that is the date on which she should have been promoted, there being nothing in the record to indicate her work performance was not satisfactory.

### B. Retroactive Promotion to GS–7/8

In early 1976, while plaintiff's appeal was pending before the ARB, the CAB was reorganized. The ARB was aware of this reorganization. (*See* Record I, at 2–31.) Under that reorganization, plaintiff's former position was reclassified to grade level GS–7/8. Due to the reorganization, that position was vacant at the time the ARB considered plaintiff's appeal.

It is clear that the ARB intended that plaintiff should, if possible, be returned to the CAB in her former position. However, despite the fact the ARB recommended that plaintiff's higher-level duties be restored, and made specific reference to the "positions occupied by the male incumbents" when recommending retroactive promotion, defendant reactivated a dormant position in the Stock Fund Accounting Section instead of returning plaintiff to her former position at the CAB. Defendant takes the position that it complied with the ARB's recommended relief by placing plaintiff in an "equivalent position."

By virtue of her recent merit promotion, plaintiff now occupies, at grade 8, one of the CAB Accounting Technician positions. As to her "equivalent position" in the Stock Fund Accounting Section, plaintiff contended that there was no opportunity for advancement, that the position was actually slotted for a grade 6, that her promotion to GS–7 was due solely to the ARB's recommendation, and that she would have been down-graded if a desk audit had been performed.

Defendant has made no showing that plaintiff was not qualified for the GS–7/8 position in July, 1976, and in fact cannot so claim since plaintiff independently filed applications for the competitively advertised GS–7/8 position and was found "highly qualified." The only reason advanced by defendant for its failure to restore her to the duties she previously held at the CAB is found in the affidavit of Captain Richard C. Maurer, in which it is stated that:

> Headquarters, Naval District Washington did not consider it appropriate to interject a non-competitive placement into the merit promotion process. (Defendant's Exhibit 2.)

The history of promotions in the CAB, however, provides an insight which renders defendant's contention that they did not wish to interrupt the merit promotion process totally unpersuasive. The fact is that incumbent Accounting Technicians in the CAB division are awarded competitively advertised positions. In April 1971, the two male incumbents were promoted, after competitive advertising, to the GS–6/7 slots they occupied when plaintiff was hired as a GS–5 in July, 1971. In 1974, the incumbent, Miss Marcellous, was promoted to the GS–6/7 slot which was upgraded because of the desk audit implemented as a result of plaintiff's contact with an EEO officer. That reclassified position had been competitively advertised. Finally, in 1976, following the CAB reorganization, incumbents Miss Marcellous and Mr. Hurte were selected for the GS–7/8 CAB positions after competitive advertising.

In July, 1976, defendant found plaintiff "highly qualified" for the reclassified GS–7/8 Accounting Technician position, but failed to select her. The undisputed factual history of merit promotions in the CAB strongly supports the conclusion that plaintiff would have been selected if she had still been employed in the CAB section.

■ Although plaintiff is now employed as a CAB GS–8 Accounting Technician, the Court concludes that but for the agency's discrimination, plaintiff would have been placed in that position in July, 1976, when the other two incumbents in the CAB were promoted. Accordingly, plaintiff will be granted retroactive promotion to grade 8, effective to July 2, 1976, the same date on which the two incumbent CAB Accounting Technicians were promoted.

### IV. Back Pay

In addition to retroactive promotion, plaintiff seeks a judgment against defendant in the amount of back pay owed her, together with interest, beginning with her first day of employment at GS–5 and continuing up to her promotion to GS–8.

Plaintiff again relies on the "make whole theory" enunciated in *Day v. Mathews, supra.*

### A. Title VII

■ Under Title VII, a back pay award is restricted to the two-year period preceding the *filing* of a formal administrative complaint. Thus, 42 U.S.C. § 2000e–5(g) specifically provides:

> Back pay liability shall not accrue from a date more than two years prior to the filing of the charge with the Commission.

Under applicable Civil Service Commission regulations the two-year back pay restriction is similarly fixed at the *filing* of an EEO complaint. 5 C.F.R. § 713.271(b)(1). Plaintiff herein filed her formal complaint with the EEO on March 29, 1974. Plaintiff asserts, however, that the two-year period should begin to run from January, 1974, when she first contacted her EEO Counsellor.

■ While there is some logic to plaintiff's contention that the two-year period should begin to run from the date she first contacted her EEO Counsellor, the statute and regulations are clear on their face. Plaintiff filed her complaint on March 29, 1974, and that is the date from which defendant's back pay liability under Title VII shall accrue. *See E.E.O.C. v. General Electric Co.,* 532 F.2d 359 (4th Cir. 1976); *N.L.R.B. v. Bell Co., Inc.,* 561 F.2d 1264 (7th Cir. 1977).

### B. Equal Pay Act

The Fair Labor Standards Act, as amended by the Equal Pay Act of 1963, prohibits discrimination on the basis of sex in the payment of wages between male and female employees in the same establishment when the duties of each are substantially the same.[9] Recovery of unpaid wages, and in addition, an equal amount as liquidated damages are specified.[10] Pursuant to further amendments in 1974, the Fair Labor Standards Act was made fully applicable to

---

**9.** 29 U.S.C. § 206(d)(1).

**10.** 29 U.S.C. § 216(b).

Civil Service employees of the Federal Government,[11] without exhaustion of administrative remedies.

An action brought under the Equal Pay Act, and thus under the Fair Labor Standards Act

> may be commenced within two years after the cause of action accrued, and every such action shall be forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued. 29 U.S.C. § 255(a).

Defendant contends that plaintiff's claims for back pay under the Equal Pay Act are time-barred. In defendant's view, the last act of discrimination took place on April 11, 1974—the date on which plaintiff's higher-level duties were withdrawn,—more than two years prior to the filing of her complaint in this action. Defendant further contends that the alternative three-year limitation period is not applicable because plaintiff cannot show defendant's actions were "willful" violations, or, that if she intends to show a "willful" violation, a genuine issue of material fact has been raised.

Plaintiff's position is that the statute of limitations on her Equal Pay Act claims has not run. Plaintiff asserts that an unlawful act within the meaning of 29 U.S.C. § 215(a)(3)[12] took place not only when defendant removed her higher-level duties on April 11, 1974, but also when she was transferred to her position at the Navy Stock Funds Accounting Section on November 18, 1974. Plaintiff further asserts that she has, in any event, met the statutory test of willfulness.

■ The undisputed record evidence supports the conclusion of the Secretary, affirmed by the ARB, that plaintiff was subjected to reprisal while working in the CAB. Plaintiff was ultimately transferred because of the "circumstances and unpleasant atmosphere" in her CAB work area. That work environment and the resulting transfer were the direct result of her various attempts, including the filing of her formal EEO complaint, to secure equal pay for her work. It is precisely the kind of retaliatory discrimination proscribed by Section 215(a)(3). Since the transfer took place less than two years before the filing of this civil action, the statute of limitations has not run.

Even if the Court were to accept defendant's contention that the last act of discrimination took place on April 11, 1974, plaintiff's Equal Pay Act claims would still not be barred. Following a detailed analysis of the legislative history of the Fair Labor Standards Act, the court in *Laffey v. Northwest Airlines, Inc., supra,* concluded:

> We reject, then, a definition of "willful" in the suit-limitation provision which would demand proof that the employer entertained a bad purpose or an evil intent. At the same time, we need not go so far as to hold that a violation is willful merely because from the employer's viewpoint the statute was in the picture. . . . We think that *at the very least the employer's noncompliance is "willful" when he is cognizant of an appreciable possibility that he may be subject to the statutory requirements and fails to take steps reasonably calculated to resolve the doubt. We think too, that the same conclusion follows when an equally aware employer consciously and voluntarily charts a course which turns out to be wrong.* 567 F.2d at 461–462. (Emphasis added.)

■ Plaintiff is not required to show bad purpose or malevolent intent. The test for "willfulness" enunciated by our Court of Appeals in *Laffey* has been satisfied. As the ARB concluded, plaintiff's ". . . duties were removed as part of a *scheme* to prevent [her] promotion to a level which she

11. 29 U.S.C. § 203(e)(2).

12. Section 215(a)(3) prohibits discharge or other discriminatory actions because an employee

has filed a complaint or otherwise instituted proceedings under or related to the Fair Labor Standards Act.

had previously performed, but for which she was not paid." (Emphasis added.)

■ Thus, no matter which incident is viewed as the last act of discrimination, plaintiff's cause of action under the Equal Pay Act is not time-barred and she is entitled to an award of back pay.

### C. Prejudgment Interest

Plaintiff has requested that her back pay award be granted with interest. Relying on the doctrine of sovereign immunity, defendant opposes an award of prejudgment interest.

■ The traditional rule is that absent an express provision to the contrary in the relevant statute or contract, prejudgment interest is not available against the government. *United States v. Alcea Band of Tillamooks*, 341 U.S. 48, 71 S.Ct. 552, 95 L.Ed. 738 (1951). While exceptions have been drawn when the government condemns private property, and when the United States acts as a private business,[13] neither exception is applicable in this case. Nor has plaintiff advanced any authority for including prejudgment interest with her back pay award.

Neither Title VII nor the Fair Labor Standards Act, of which the Equal Pay Act is a part, specifically provides for the inclusion of prejudgment interest on back pay awards. With respect to the absence of an express provision in Title VII, and denial of prejudgment interest in federal employee cases, *see Richerson v. Jones*, 551 F.2d 918 (3rd Cir. 1977), and *Fischer v. U. S. Dept. of Transportation*, 430 F.Supp. 1349 (D.Mass. 1977).

■ Moreover, the Civil Service Commission, acting pursuant to authority granted by 42 U.S.C. § 2000e–16(b), has elected not to include prejudgment interest in the arsenal of remedies available for Title VII violations. *See* 5 C.F.R. § 713.217. Nor is prejudgment interest encompassed by the regulations promulgated pursuant to the

Back Pay Act, 5 U.S.C. § 5596. *See* 5 C.F.R. § 550.801, *et seq.* Accordingly, the Court concludes that plaintiff, a federal employee, is not entitled to prejudgment interest on the back pay award to which this Court has concluded she is entitled.

### V. Liquidated Damages

Additionally, under the Equal Pay Act, plaintiff seeks an award of liquidated damages pursuant to 29 U.S.C. § 216(b). That subsection provides that an employer violating the Act is statutorily liable not only for unpaid compensation, but also for ". . . an additional equal amount as liquidated damages."

■ A liquidated damages award, however, is not strictly mandatory, and turns on whether defendant has acted in "good faith."

> [I]f the employer shows to the satisfaction of the court that the act or omission giving rise to such act was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act of 1938, as amended, the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified by Section 216 of this Title. 29 U.S.C. § 260.

In *Addison v. Huron Stevedoring Corp.*, 204 F.2d 88 (2nd Cir. 1953), *cert. denied*, 346 U.S. 877, 74 S.Ct. 120, 98 L.Ed. 384 (1953), the court defined "good faith" as "an honest intention to ascertain what the Fair Labor Standards Act requires and to act in accordance with it." 204 F.2d at 93. However, this Court's discretion in limiting or denying liquidated damages turns on whether defendant has met

> the "substantial burden" of proving that his failure to comply was in good faith and also was predicated on reasonable grounds for a belief that he was in compliance. If the employer cannot convince the court in these respects, an award of

---

13. *See, e. g., Seaboard Air Line Ry. Co. v. United States*, 261 U.S. 299, 43 S.Ct. 354, 67 L.Ed. 664 (1923); and *Standard Oil Co. of New* *Jersey v. United States*, 267 U.S. 76, 45 S.Ct. 211, 69 L.Ed. 519 (1925).

liquidated damages remains mandatory; . . . *Laffey v. Northwest Airlines, Inc., supra,* 567 at 464–465.

As this Court has previously concluded, the facts fully support the ARB's *prima facie* finding of sex discrimination. Two of the ARB's conclusions bear directly on whether, as a matter of law, defendant acted in good faith. First, the ARB found that "[t]he agency was aware of the [discriminatory situation] but condoned the action by not up-grading the position or immediately eliminating the higher-level duties." Second, the ARB concluded that plaintiff's higher-level duties were "removed as part of a scheme to prevent complainant's promotion to a level which she had previously performed, but for which she was not paid." Defendant has in no way contested these findings.

 Accordingly, the Court is of the opinion that defendant has not affirmatively established that its failure to comply with the Act was in good faith and predicated on reasonable grounds for belief that it was in compliance with the Act. *Laffey v. Northwest Airlines, supra.* Plaintiff is entitled to an award of liquidated damages in an additional equal amount as that to which she is entitled to receive as unpaid compensation under the Equal Pay Act.

### VI. Attorneys' Fees

Plaintiff contends that if she prevails in this action, she is entitled to an award of attorneys' fees under both Title VII and the Equal Pay Act. She does not, however, seek attorneys' fees for work done at the administrative level.[14]

 In defendant's view, attorneys' fees under Title VII are discretionary and are to be awarded only if plaintiff demonstrates that she is a "prevailing party" within the meaning of the Act.

In Title VII suits

the Court, in its discretion, may allow the prevailing party, . . . a reasonable attorney's fee as part of the costs, and the Commission and the United States shall be liable for costs the same as a private person. 42 U.S.C. § 2000e–5(k).

 Since plaintiff has prevailed on her Title VII claims, she is entitled to reasonable attorneys' fees and costs of this action. *Parker v. Califano,* 182 U.S.App.D.C. 322, 561 F.2d 320 (1977).

 Plaintiff has likewise prevailed on her Equal Pay Act claims. In suits brought under that Act, an award of attorneys' fees and costs is mandatory.

The court . . . shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action. 29 U.S.C. § 216(b).

### CONCLUSION

The record and documents herein provide a sufficient basis for granting plaintiff's motion for summary judgment. *See Hackley v. Roudebush,* 171 U.S.App.D.C. 376, 520 F.2d 108 (1975). Having concluded that there is no genuine issue of any material fact, plaintiff is entitled to judgment as a matter of law for the reasons hereinabove set forth.

### JUDGMENT AND ORDER

This action came before the Court on plaintiff's motion for summary judgment, defendant's cross-motion and opposition thereto, and defendant's motion for leave to amend the Answer. Having considered the arguments raised in the various memoranda filed in support of and in opposition to said motions, and having concluded that there is no genuine issue of any material fact and that plaintiff is entitled to judgment as a matter of law for the reasons set forth in the Memorandum Opinion filed herein this same date, it is by the Court this 22nd day of May, 1978,

ORDERED, ADJUDGED, and DECLARED:

1. That defendant has discriminated against plaintiff on the basis of sex in viola-

---

**14.** *See* plaintiff's Memorandum filed December 2, 1976, at 5.

tion of Title VII of the Civil Rights Act of 1964, as amended by the Equal Employment Opportunity Act of 1972, 42 U.S.C. § 2000e, *et seq.* (Title VII), and the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, as amended by the Equal Pay Act of 1963, 29 U.S.C. § 206 (Equal Pay Act); and it is further

ORDERED, ADJUDGED, and DECREED:

1. That plaintiff be retroactively promoted as an Accounting Technician in the Command Accounting Branch, Financial Service Division, Supply and Fiscal Office at the Washington, D. C. Navy Yard to:

 (a) grade level GS–6, effective July 28, 1971, the date on which plaintiff was hired; and to

 (b) grade level GS–7, effective July 28, 1972, allowing plaintiff one year in grade GS–6 from the date of hiring before promotion; and to

 (c) grade level GS–8, effective July 2, 1976, the same date on which the other two incumbents in the Command Accounting Branch were promoted to GS–8; and,

2. That plaintiff be, and hereby is, awarded back pay under Title VII to March 29, 1972, two years prior to the date she filed her EEO Complaint; and

3. That plaintiff is entitled to an award of back pay under the Equal Pay Act to June 7, 1973, three prior to the filing of this civil suit, the Court having concluded defendant's removal of her higher-level duties was "willful" within the meaning of the Fair Labor Standards Act; provided, however, that plaintiff shall in no way receive overlapping relief with her Title VII back award; and

4. That plaintiff be, and hereby is, awarded liquidated damages in an amount equal to the back pay award to which she is entitled under the Equal Pay Act, the Court having concluded that defendant did not act in good faith and did not have reasonable grounds for believing such conduct was in compliance with the Fair Labor Standards Act; and

5. That plaintiff be, and hereby is, awarded reasonable attorneys' fees and costs of this civil action having prevailed on both her Title VII and Equal Pay Act claims; and it is further

ORDERED, ADJUDGED, and DECREED:

1. That plaintiff be, and hereby is, denied prejudgment interest on her back pay and liquidated damages awards; and

2. That plaintiff's monetary recovery hereunder shall be reduced by such amount as plaintiff has already received by reason of the action taken by defendant pursuant to the Appeals Review Board decision; and

3. That plaintiff's request for an injunction prohibiting defendant from future unlawful discriminatory acts, including reprisal, punishment or harassment be, and hereby is, denied inasmuch as plaintiff will have available to her the full range of administrative and judicial remedies should defendant engage in any such future unlawful acts of sex discrimination; and it is further

ORDERED,

1. That defendant's motion for leave to amend the Answer be, and hereby is, granted; and

2. That plaintiff's motion for summary judgment be, and hereby is, granted; and defendant's cross-motion for a summary judgment be, and hereby is, denied.