**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

v.

**The STATE OF RHODE ISLAND and Providence Plantations, and the Board of Regents for Education.**

**Civ. A. No. 77–0097.**

United States District Court, D. Rhode Island.

Aug. 12, 1982.

---

Sandy Hom, E.E.O.C., New York City, Albert Ross, U.S. Dept. of Labor, Boston, Mass., for plaintiff.

Eileen G. Cooney, Sp. Asst. Atty. Gen., Dept. of Attorney General—R.I., Providence, R.I., for defendants.

### OPINION

PETTINE, Senior District Judge.

The Equal Employment Opportunity Commission [1] seeks to enjoin the defendants from violating the equal pay provision of Section 6(d)(1) of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. Section 206(FLSA) including the restraint of any withholding of payment of wages found by the Court to be due to employees under the Act, with interest from the date such wages were due and payable until paid, and costs. The plaintiff further alleges that the defendants acted willfully and thus seeks a three year back-wage recovery under Section 6 of the Portal to Portal Act.[2] The

---

1. The action was initially brought by the Secretary of Labor; the Equal Employment Opportunity Commission was substituted by an Order and Stipulation dated November 27, 1979. *See* Reorganization Act of 1978.

2. Any action commenced on or after May 14, 1947, to enforce any cause of action for unpaid minimum wages, unpaid overtime compensa-

tion, or liquidated damages, under the Fair Labor Standards Act of 1938, as amended, the Walsh-Healey Act, or the Bacon-Davis Act—

(a) if the cause of action accrues on or after May 14, 1947—may be commenced within two years after the cause of action accrued, and every such action shall be forever barred

defendants deny coverage under the Act as well as any violation of the Equal Pay Act; they also affirmatively assert there was no willful violation and plead the statute of limitations.

## FINDINGS OF FACT

The equal pay violations in controversy are alleged to exist solely between the all female "cleaners" and the all male "janitors" of the housekeeping staff for Rhode Island College located in the City of Providence. The college has twenty-three (23) buildings servicing eight thousand (8,000) students plus twenty-three hundred (2,300) other people, who serve as either administrators, educators, clerical or blue-collar workers.

The housekeeping staff consists of a supervisor, three (3) principal janitors, four (4) senior janitors, forty-two (42) janitors and seventeen (17) cleaners.

The duties performed by this staff to maintain the college buildings are no different than those being done each day, to some lesser or greater degree, in every home; these are: the cleaning of bathrooms including the mopping and/or washing of tile walls, floors and toilet bowls; dry mopping or washing of other floors; dusting furniture, which requires bending and stretching; sweeping floors and stairways or vacuum cleaning rugs and stair runners. Washing encompasses not only the foregoing, but also the windows, and certain tables used by students, who have a penchant for writing on them and the classroom blackboards. Other duties are cleaning up spillage as it may occur, cleaning a kitchen stove, carrying of supplies, and the emptying of waste paper baskets, together with the removal of general trash from the buildings to outside dumpsters.

The cleaners are not required to carry furniture though the testimony established they do move furniture as may be required in the performance of their other cleaning chores. Nor are cleaners required to carry

cases of cleaning supplies, but they do carry some supplies from general storage to where it may be needed in their work. Further, cleaners do not use power equipment such as rug shampooers and buffing machines; indeed, there was no evidence that cleaners ever used such equipment. In addition, the evidence established that the janitors, who in the main, unlike the cleaners, worked the night shift, were assigned the responsibility to do all the stripping, waxing and buffing of the floors, washing of the blackboards, the wall-to-wall washing of stairways and emptying of the trash. However, the testimony also established that the janitors were less than diligent in the accomplishment of these tasks; consequently, the cleaning women, finding such work undone, tackled, with the exception of the waxing, buffing, and stripping, many of these jobs themselves. The defendants concede that on "some occasions" the janitors do not complete their work and that the cleaners then voluntarily do it though it is not part of their assigned duties. Post Trial Brief at 6.

The various tasks are not necessarily performed equally. Each cleaner is assigned a specific building or buildings. These differ in terms of cleaning needs; one may require a significant amount of dusting time as against another which may require more sweeping and picking up of trash. The same is true as to janitors; in one building he may have to spend a large part of his work day moving furniture and vacuum cleaning rugs while in another building a fellow worker may be engaged primarily in washing a tile floor.

It cannot be denied that though cleaners do not do certain heavy work, such as shampooing rugs, buffing floors or carrying cases of supplies, there is an overlapping of the tasks performed by cleaners and janitors.

The defendants contend there is no substantial equality in the work because janitors alone a) shampoo rugs, b) buff and wax

unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may

be commenced within three years after the cause of action accrued. 29 U.S.C. Section 255 (emphasis added.)

floors, and c) do larger areas where the work is similar, and that all this requires greater effort. They further argue that the janitors' task of wall-to-wall cleaning requires empty classrooms, labs and corridors, and since some buildings are used for evening classes and activities the janitors are forced to work faster to compress their normal cleaning into the time period remaining between the close of the evening classes and activities at the end of the shift.

By agreement, the depositions of thirteen cleaners and thirty-eight janitors, presently employed at Rhode Island College, were introduced in evidence. The plaintiff's and defendant's summaries of these depositions do not differ in any material way. However, I accept the plaintiff's summary as the more completely accurate of the two and incorporate the same as part of these findings of fact. These findings are—

*"Cleaners and Janitors —*

1. All cleaners and janitors perform the same work each day in the bathroom areas to which they are assigned.

2. All cleaners and janitors vacuum their assigned carpeted areas from two to five times per week.

*Cleaners —*

1. All cleaners dry mop floors each day.

2. All cleaners vacuum carpeted areas assigned to them two to five times per week, and when needed.

3. All cleaners wet-mop spills on tiled areas assigned to them. When cleaners are required to work floors, they must use a five-gallon bucket and carry it to their location for use. Also, the cleaners must hand wring their wet-mops.

4. Some cleaners wash floors in the tiled areas assigned to them. Those cleaners who wash floors do so on the average of one time per week, or when needed.

5. Three cleaners regularly remove trash collected from their assigned area to a dumpster located outside the building to which they are assigned. In addition to the removing of trash, the cleaners must pick, remove and bag it.

6. One cleaner only infrequently removes trash collected from her assigned area to a dumpster located outside the building to which she is assigned.

7. Nine cleaners remove trash to a hallway where it is picked up by a janitor.

8. All cleaners dust the areas assigned to them.

9. No cleaner buffs floors.

10. No cleaner shampoos rugs.

11. No cleaner strips floors.

12. No cleaner waxes floors.

13. All cleaners move furniture aside while cleaning in order to get under the furniture.

14. One cleaner moves furniture up to three feet while cleaning.

15. No cleaner moves furniture outside the room while cleaning.

16. One cleaner has used the water pick up, a power machine, during the last year.

17. No cleaner uses the electrically powered buffer, shampooer or stripping machine.

*Janitors —*

1. One janitor has not buffed floors or used a water pick up during the last year.

2. One janitor does not remove trash to a dumpster outside his assigned area each day.

3. One janitor does not use power machinery to strip or buff floors in his assigned area but does the work by hand.

4. Thirty-seven janitors remove trash from their assigned areas to a dumpster located outside the building(s) to which they are assigned. The dumpsters are no more than twenty feet away from the building.

5. Thirty-seven janitors wash the floors in their assigned area from two to five times per week. The janitors use a five-gallon bucket with wheels and a wringer attached.

6. Thirty-seven janitors strip each floor in their assigned area at least one to two times each year. Where stripping is done there are at least two to three janitors stripping the same floor.

7. Twenty janitors strip the floors in the areas to which they are assigned at least four times each year. When this stripping is done the janitors work in a team of two to three janitors.

8. Stripping floors requires removing all wax from the floor with either an electrically powered stripper or buffing machine, polishing, waxing and sealing the floor.

9. Twenty-nine janitors regularly [polish the floors in] (floors are polished on a needed basis) the areas to which they are assigned [and] in between floor stripping using either an electrically powered [machine or buffer]. The janitor [is] usually assisted by another janitor.

10. At least thirty janitors shampoo the rugs in their assigned areas at least one time per year.

11. At least fourteen janitors shampoo the rugs in their assigned areas at least three times per year.

12. An electrically powered shampooer or an electrically powered buffer with attachment is used to shampoo rugs.

13. In the course of stripping floors and/or shampooing rugs, thirty-five janitors use an electrically powered water pickup machine to remove excess water from the floor or rug. This is performed by two or more janitors.

14. All janitors move furniture from one side of the room to the other while stripping floors or shampooing rugs. When moving furniture outside the rooms, the janitors work in teams of two to three janitors, when large furniture is required to be removed they are assisted by another janitor.

15. Some janitors remove furniture from the room in which they are working when stripping floors or shampooing rugs, and when moving the furniture they are assisted by another janitor."

David Chapman, employed by the college as a janitor for approximately seven years testified that his duties are the same as those of the cleaners. He stated that he rarely shampoos a rug because it is considered a project job. I conclude this means a task specifically scheduled as an exclusive task with certain assigned personnel. He further testified that janitors and cleaners basically do the same kind of work and that the buffing, in relation to the over-all duties, does not take a significant amount of time. In his opinion the difference between the overall work between cleaners and janitors is only five percent (5%). This testimony was compatible with that of another witness who said there is no significant difference.

Mr. Chapman appeared to me to be a forthright individual. I accept his testimony albeit, as the defendant points out, his wife was a former housekeeping employee whose job was abolished by the college. I do not find that this fact prejudiced his testimony. True, other witnesses opined that there was a Twenty-five percent (25%) difference in greater effort between the janitors and cleaners. I found this testimony unimpressive.

## CONCLUSIONS OF LAW

■ An employer is prohibited from the sex discriminatory practice of paying different wages for equal work.[3]

■ A prima facie case of sex discrimination in wages under the Equal Pay Act requires the plaintiff to show first that the defendant employer paid higher wages to the favored class for equal work on jobs requiring equal skill, effort and responsibility under similar conditions. *Corning Glass Works v. Brennan,* 417 U.S. 188, 195, 94 S.Ct. 2223, 2228, 41 L.Ed.2d 1 (1974). Once the prima facie case is established, the burden shifts to the defendant to show that the

---

**3.** No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed; between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions. 29 U.S.C. Section 206(d).

favored class was paid more because of one of the exceptions listed under the Act, 29 U.S.C. Section 206(d)(1)(i–iv).[4] The defendant employer's burden of establishing that one of the four exceptions in Section 206(d)(1) applies is in the nature of an affirmative defense. *See Melanson v. Rantoul,* 536 F.Supp. 271 (D.R.I.1982). 7 A.L.R. Fed. 707, 741.

As I stated in *Melanson,* supra at 286, "[w]hether or not there exists a prohibited sex based wage differential is dependent on a showing that the work is equal in terms of skill, effort, and responsibility and is performed under similar working conditions. *Brennan v. Corning Glass Works,* 417 U.S. 188, 94 S.Ct. 2223, 41 L.Ed.2d 1 (1974). As a general proposition, the term 'equal' is one of 'substantial equality.' *Usery v. Allegheny County Institution District,* 544 F.2d 148, 153, n. 4 (3rd Cir. 1976); *Katz v. School District of Clayton,* 557 F.2d 153, 156 (8th Cir. 1977); *Shultz v. Wheaton Glass Co.,* 421 F.2d 259, 265 (3rd Cir. 1970), cert. denied, 398 U.S. 905, 90 S.Ct. 1696, 26 L.Ed.2d 64 (1970). Comparison of jobs requires that the duties 1) be 'closely related' or 'very much alike,' *Hodgson v. Miller Brewing Co.,* 457 F.2d 221, 227 (7th Cir. 1972); and 2) require substantially equal skill, effort and responsibility under similar working conditions. *Hodgson v. Corning Glass Works,* 474 F.2d 226, 234 (2nd Cir. 1973), aff'd, 417 U.S. 188, 203–204, n. 24, 94 S.Ct. 2223, 2232 n. 24, 41 L.Ed.2d 1. In making these determinations, one looks to the 'actual job performance and content—not job titles, classifications or descriptions.' *Gunther v. County of Washington,* 623 F.2d 1303, 1309 (9th Cir. 1979), aff'd, 452 U.S. 161, 101 S.Ct. 2242, 68 L.Ed.2d 751 (1981).

The Court should not engage in job rating, but as the Seventh Circuit stated:

We agree that the Equal Pay Act does not authorize courts to equalize wages merely because they find that two substantially different jobs are worth the same monetarily to the employer and therefore should be paid the same wages. However, '[t]here is evidence that Congress intended that jobs of the same or closely related character should be compared in applying the equal pay for equal work standard....' *Hodgson v. Miller Brewing Company* 457 F.2d 221, 227 (7th Cir. 1972).

*Melanson, supra* at 286–87.

■ The application of this law to the facts at issue inexorably establishes the closely related duties of cleaners and janitors. These duties manifestly require substantially equal skill, effort and responsibility and are performed under similar working conditions.

## SUBSTANTIAL EQUALITY OF THE WORK

a) *Closely related duties:*

As a starting point, I note that the duties performed by both categories of housekeeping employees are for all practical purposes the same. In the style of Gertrude Stein, dusting is dusting is dusting, and though there may be some differences in cleaning tasks and in the use of certain equipment to maintain the various buildings, cleaning is cleaning is cleaning. This is not to say that there can be no differences, but in this case, on this record, the duties of janitors and cleaners are one. They both perform the same basic routine duties such as dusting, vacuuming, emptying wastebaskets, sweeping, cleaning lavatories, etc.

From the depositions introduced it is clear that the only difference in the duties performed by the janitors and cleaners is in the buffing, floor stripping and rug shampooing, which, when done, is shared, in most instances, by a team of two or three janitors as a special project. All other work, if not identical, is substantially equal. As to the use of the buffing/shampooing ma-

---

**4.** Unequal wage payments to persons doing equal work that are "made pursuant to i) a seniority system, ii) a merit system, iii) a system which measures earnings by quantity or quality of production, or iv) a differential based on any other factor other than sex" are not prohibited by the Equal Pay Act. 29 U.S.C. Section 206(d).

chines I find the skill and effort in its operation are not significantly greater than the skill and effort the cleaners exert in washing, mopping, etc., which work is not performed or shared as a team effort. The machines are on wheels and the effort required to operate them was not shown to be of any greater magnitude than general washing. There was no evidence in this regard, *i.e.*, evidence of effort comparisons.

In comparing jobs to determine if the work is substantially equal a perfect fit is not necessary; jobs do not have to be interchangeable. *Hodgson v. Miller Brewing, supra* (regarding as equal the work of analytic lab technicians who performed one set of tests on beer and the work of packaging lab technicians who performed a different set of tests on glass and cardboard containers); *Brennan v. Woodbridge School District,* 8 EPD ¶9,640 (D.Del.1974) (comparing a male history teacher and handball coach with a female English teacher and softball coach); *Hodgson v. Daisy Manufacturing Company,* 317 F.Supp. 538 (W.D.Ark. 1970), *aff'd per curiam,* 445 F.2d 823 (8th Cir. 1971) (comparing men and women employees who made different gun parts and assembled different gun models). *See also Brennan v. Houston Endowment, Inc.* 73 L.C. Paragraph 33,022 (S.D.Tex.1974), *aff'd per curiam,* 511 F.2d 1190 (5th Cir.), cert. denied, 423 U.S. 893, 96 S.Ct. 192, 46 L.Ed.2d 125 (1975).

A number of cases hold that job differences are to be ignored unless the employer can show that the differences:

1. require greater skill, effort or responsibility;

2. consume a significant amount of time of all the higher paid employees; and,

3. are of an economic value commensurate with the wage differential. *See Brennan v. Owensboro Daviess County Hospital,* 523 F.2d 1013, 1030 (6th Cir. 1975); *Brennan v. Prince William Hospital,* 503 F.2d 282, 285, 286 (4th Cir. 1974); *Hodgson v. Behrens Drug Co.,* 475 F.2d 1041, 1050 (5th Cir. 1973), *cert. denied,* 414 U.S. 822, 94 S.Ct. 121, 38 L.Ed.2d 55 (1973); *Hodgson v.*

*Corning Glass Works,* 474 F.2d 226, 234 (2nd Cir. 1973); *Hodgson v. Fairmount Supply Co.,* 454 F.2d 490 (4th Cir. 1972); *Hodgson v. Brookhaven General Hospital,* 436 F.2d 719, 725 (5th Cir. 1970).

A more specific discussion of each of these criteria and others follows:

b) *Skill:*

It is clear that prior experience or training is not a consideration. All the duties are manifestly unskilled and the fact that some janitors use buffers and shampooers is of no consequence. The use of such equipment requires no special knowledge or training. There was no evidence introduced showing that the skill required to operate a buffer, etc. was any greater than that required to vacuum clean a rug.

"Skill includes consideration of such factors as experience, training, education and ability." 29 C.F.R. Section 800.12. The jobs under discussion are so basic and manifestly unskilled that I do not find this "skill issue" to be crucial.

c) *Effort:*

I can do no better than quote from *Brennan v. South Davis Community Hospital,* 538 F.2d 859, 863 (10th Cir. 1976) (footnote omitted):

In assessing the effort differences pointed to by appellant, we find the Secretary's interpretations of that concept helpful and persuasive.

Effort is concerned with the measurement of the physical or mental exertion needed for the performance of a job. Where jobs are otherwise equal under the Act, and there is no substantial difference in the amount or degree of effort which must be expended in performing the jobs under comparison, the jobs may require extra effort in their performance even though the effort may be exerted in different ways on the two jobs. Differences only in the kind of effort required to be expended in such a situation will not justify wage differentials.

29 C.F.R. Section 800.127.

[T]he occasional or sporadic performance of an activity which may require extra physical or mental exertion is not alone sufficient to justify a finding of unequal effort.

29 C.F.R. Section 800.128.

The extra effort which janitors may have exerted in running a larger floor cleaning machine once a day, shoveling some snow and carrying large garbage cans is simply too insubstantial to make their jobs unequal. *See Brennan v. Board of Education,* 374 F.Supp. 817 (D.N.J.1974), *appeal dismissed,* 468 F.2d 1325 (3rd Cir. 1972). "Insubstantial or minor differences in the degree or amount of skill, or effort, or responsibility required for the performance of jobs will not render the equal pay standard inapplicable." 29 C.F.R. Section 800.122. All the work was within the general cleaning function and the slight differences in kinds of effort would not prevent a finding of substantially equal efforts. Upon this record, we believe there was substantial evidence to support the trial court's determination that the jobs were substantially equal.

This fits perfectly the factual situation at hand. Both janitors and cleaners bend, stoop, lift, carry and push when they clean their areas. The use of the buffers and shampooers is of no consequence. Operating such equipment does not require any significantly greater effort than the other cleaning chores, and this is especially so when several or more janitors work in a team as they do. Furthermore, the buffing, stripping, and shampooing may well be considered as sporadic jobs. The depositions show that one janitor has not buffed a floor during the last year, another does not use a power machine to strip. Further, stripping is only done one to two times each year—others do it four or more times a year. I find that this exertion is not sufficient to justify a finding of unequal effort.

d) *Responsibility:*

As in *Brennan v. Board of Education, supra,* the responsibility factor is "concerned with 'the importance of the job obli-gation.' 29 C.F.R. Section 800.129. Here, neither category of employee supervises one another. Their cleaning obligations are equal." 374 F.Supp. at 829.

e) *Working conditions:*

This hardly needs comment; the employees all work in the college buildings under similar working conditions. As pointed out by the plaintiff, "[T]he following factors constitute the physical surroundings and hazards of a job: 'inside work v. outside work, exposure to heat, cold, wetness, humidity, noise, vibrations, hazards (risk of bodily injury), fumes, odors, toxic conditions, dust and poor ventilation'. 2 U.S. Department of Labor, Dictionary of Occupational Titles 656 (3rd 1965), which the Supreme Court refers to [in *Brennan v. Corning Glass Works,* 417 U.S. 188, 94 S.Ct. 2223, 41 L.Ed.2d 1 (1974)]. Clearly all of defendants' employees are exposed to all or none of these factors to the same degree." Plaintiffs' Pre-Trial Brief p. 18.

f) *Economic value:*

Having found that there is substantial equality in the work, there can be no justification for any pay differential.

Evaluating, in their entirety, the work of janitors and cleaners I find that "in the aggregate the jobs require substantially similar skills, efforts and responsibilities." *Laffey v. Northwest Airlines, Inc.* 567 F.2d 429, 449 (D.C.Cir.1976). Despite minor variations, the work is equal.

■ It is significant that all the women are in the lower pay grade. This kind of grouping is suspect and when coupled with the plaintiff's proof that the jobs are substantially equal it establishes a prima facie case. The burden shifted to the defendant to prove that the suspect pay differentials were not sex based, in that the differential is justified under one of the Act's four exceptions, *See Shultz v. Wheaton Glass,* 421 F.2d at 266–67; *Hodgson v. Food Stores, Inc.* 329 F.Supp. 102 (M.D.Pa.1971). The exceptions are not applicable on these facts. The defendants have failed to sustain their burden of proof.

## INJUNCTIVE RELIEF

[8] Injunctive relief is clearly appropriate here; this is especially so since the defendants refuse to comply with the Equal Pay Act. 29 U.S.C. Section 217 expressly confers jurisdiction on the District Courts to restrain violations of the Act. *Wirtz v. Jones,* 340 F.2d 901, 903 (5th Cir. 1965). The need for injunctive action was well stated in *Mitchell v. Pidcock,* 299 F.2d 281 (5th Cir. 1962).

> The public interest is jeopardized here. The injunctive processes are a means of effecting general compliance with national policy as expressed by Congress, a public policy judges too must carry out—actuated by the spirit of the law and not begrudgingly as if it were a newly imposed fiat of a presidium.
>
> *Id.* at 287.

Having established that equitable relief must be afforded, the question arises as to the appropriate kind of relief, that is, whether or not the Court should grant future relief as well as an injunction against the restraint upon the withholding of back wages found by the Court to be due employees. And if back wages are proper, then for what period of time should they be awarded.

▬▬▬ The primary focus of equitable relief is to effectuate the congressional purpose of protecting complying employees against those who pay substandard wages and thus redress a wrong being done to the public good. *See, Wirtz v. Jones, supra,* at 905. The public interest cannot be vindicated if erring employees were merely restrained from future violations.

> It would be a hollow victory indeed for the Secretary to litigate with an offending employer over a five year period, only to secure his future compliance. If that were the sole purpose of the legislation ... then an unjust enrichment of the offending employer by foreclosing the Secretary's recovery of improperly withheld wages would result.

* Telephone conferences, Eileen Cooney, Asst. Attorney General July 27, 1982, and Leslie L.

*Schultz v. Wheaton Glass Co.,* 319 F.Supp. 229, 232 (D.N.J.1970), *aff'd sub nom., Hodgson v. Wheaton Glass Co.* 446 F.2d 527 (3d Cir. 1971).

Full relief thus requires payment of back wages illegally withheld as well as restraint of future violations.

Though the defendants pleaded the two year statute of limitations this affirmative defense is not being pursued. Counsel for the defendant so advised the Court.* However, pursuant to 29 U.S.C. Section 255, the plaintiff seeks a three year back pay award, which must be premised on a willful violation. See n.2, *Supra.* The defendants deny that there was any "willful" violation.

## WILLFULNESS

"Willfulness" as it relates to back pay awards was addressed in *Coleman v. Jiffy June Farms, Inc.,* 458 F.2d 1139 (5th Cir. 1972). There the Court held that conduct is willful when "there is substantial evidence in the record to support a finding that the employer knew or suspected that his actions might violate the FLSA. Stated more simply, we think the test should be: Did the employer know the FLSA was in the picture?" *Id.* at 1142.

*Nitterright v. Claytor,* 454 F.Supp. 130, 140–141 (D.D.C.1978), citing *Laffey v. Northwest Airlines, Inc.,* 567 F.2d 429 (D.C. Cir.1976) stated:

> We reject, then, a definition of "willful" in the suit-limitation provision which would demand proof that the employer entertained a bad purpose or an evil intent. At the same time, we need not go so far as to hold that a violation is willful merely because from the employer's viewpoint the statute was in the picture.... We think that at the very least the employer's noncompliance is "willful" when he is cognizant of an appreciable possibility that he may be subject to the statutory requirements and fails to take steps reasonably calculated to resolve the doubt.

Payton, the attorney for plaintiffs, same date.

We think too, that the same conclusion follows when an equally aware employer consciously and voluntarily charts a course which turns out to be wrong. 567 F.2d at 461–462. (Emphasis added.)

Plaintiff is not required to show bad purpose or malevolent intent.

■ Accepting this definition, as I do, I find the defendants' conduct willful, and thus order a three year back pay award with interest thereon. The defendants have done nothing more than intransigently insist that the jobs are not substantially equal. As against this we have two distinct sex segregated job categories at unequal rates of pay. In spite of this the defendants took no steps "reasonably calculated to resolve the doubt." Certainly the defendants were aware of the Equal Pay Act and that they were subject to its requirements. The sovereign state of Rhode Island and the Board of Regents surely can be charged with a degree of sophistication a cut above most other employers. I cannot attribute to these defendants ignorance of the existence and requirements of the Act. That would be too much. Realizing the applicability of the Equal Pay Act to their employees they should have taken steps "reasonably calculated" to resolve any doubts about being subjected to its provisions. Here they "consciously" and "voluntarily" maintained their position which "turned out to be wrong". They must now pay the price for such stubbornness.

## LIQUIDATED DAMAGES

The Equal Pay Act, through Section 16 of the FLSA provides for an award of not only unpaid compensation, but also of "an additional equal amount as liquidated damages." 29 U.S.C. Section 216(b). Whether such an award should be made turns on "good faith"—unlike the three year back wage award which depends on "willfulness."

Although section 16 speaks in mandatory terms, an award of liquidated damages may be limited by the provisions of section 11 of the Portal-to-Portal Act, 29 U.S.C. Section 260.

Section 11 of the Portal-to-Portal Act provides:

In any action commenced prior to or on or after the date of the enactment of this Act [May 14, 1947] to recover unpaid minimum wages, unpaid overtime compensation, or liquidated damages, under the Fair Labor Standards Act of 1938, as amended [29 U.S.C. Sections 201–216, 217–219, 557], if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act of 1938, as amended [29 U.S.C. Sections 201–216, 217–219, 557], the Court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in section 16 of such Act [29 U.S.C. Section 216].

■ Good faith requires that the employer have "an honest intention to ascertain what the Equal Pay Act requires and to act in accordance with it." *Nitterright, supra,* at 140, citing *Addison v. Huron Stevedoring Corp.,* 204 F.2d 88, 93 (2d Cir.) *cert. denied,* 346 U.S. 877, 74 S.Ct. 120, 98 L.Ed. 384 (1953). Even when good faith is shown the employer has to show he had reasonable grounds for believing he was in compliance with the Act in order for the Court to exercise its discretion to limit the award of liquidated damages, *Nitterright, supra* at 140. *Accord Reeves v. International Telephone and Telegraph Corp.,* 616 F.2d 1342, 1352 (5th Cir. 1980), *cert. denied,* 449 U.S. 1077, 101 S.Ct. 857, 66 L.Ed.2d 800 (1981).

I must decide whether or not the defendants have met their "substantial burden" of proving this affirmative defense of "good faith" and also that they had reasonable grounds for believing they were in compliance.

■ I have previously noted the defendants' conduct in awarding the payment of three years of back wages. Such conduct shows a lack of good faith and the want of

reasonable grounds for believing they were in compliance with the Act. There is no evidence of any action by the defendants to ascertain the requirements of the Act; nor is there any evidence they wished to comply with the provisions of the law. Simply speaking, they offered no facts in support of an honest effort to comply with the Equal Pay Act. Finally, there isn't a single piece of evidence, in this record, to show they had reasonable grounds for believing they were in compliance.

I hold that the plaintiff must be awarded liquidated damages. *See* 29 C.F.R. Section 790.22 (1981). The amount of such award shall be equal to the amount due as back wages.

In conclusion, the plaintiff is awarded:

1) injunctive relief as to future violations;

2) injunctive relief against the withholding of back wages found due the employees for the period beginning three years prior to the institution of this suit;

3) interest on the back wages that are due;

4) liquidated damages in an amount equal to the back wages; and,

5) costs of this action.

The Court directs the parties to confer with respect to damages in an effort to mutually agree as to the amount awarded by this opinion.

Plaintiff will prepare an order in keeping hereof.